**COALITION TO ADVOCATE PUBLIC UTILITY RESPONSIBILITY, INC., a Minnesota non-profit corporation, et al., Plaintiffs,**

v.

**Robert H. ENGELS et al., Defendants.**

**No. 4-73 Civ. 208.**

United States District Court, D. Minnesota, Fourth Division.

April 24, 1973.

Wm. M. Mahlum, St. Paul, Minn., for plaintiffs.

Edw. Schwartzbauer, Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for defendants.

## ORDER

MILES W. LORD, District Judge.

This matter is before the Court pursuant to plaintiffs' motion for a preliminary injunction halting the defendants' solicitation of proxies in regard to Northern States Power Company's annual stockholders' meeting which has been scheduled for May 9, 1973. The parties previously appeared before this Court on April 12, 1973, at which time a temporary restraining order was issued requiring that the defendants cease from any further proxy solicitation pending the hearing on the preliminary

injunction. On April 18, a hearing was held on the motion for the preliminary injunction. Based on the arguments, files, memoranda and affidavits submitted, the Court makes the following Findings of Fact and Conclusions of Law.

1) The plaintiffs in this matter include the Coalition to Advocate Public Utility Responsibility (hereafter Coalition), individual members and representatives of the Coalition, and Alpha Smaby. The Coalition is a public interest group organized as a Minnesota non-profit corporation for the purpose of providing education to the community on matters of public concern relating to public utilities. Alpha Smaby is a shareholder of Northern States Power Company (hereafter N.S.P.) and a candidate for election to the Board of Directors of N.S.P.

2) N.S.P. is a corporation formed under the laws of the State of Minnesota and provides electric and gas service to customers throughout a four-state service area. N.S.P. is listed on the New York Stock Exchange and has approximately 100,000 shareholders owning its two classes of capital stock. The individual defendants are current members of the Board of Directors and Officers of N.S.P.

3) At the beginning of this year, the plaintiffs, concerned with the environmental and private consumer policies of N.S.P., considered the possibility of running a candidate of their choice for the Board of Directors of N.S.P. The plaintiffs decided to support Alpha Smaby as a so-called "public interest" candidate for a seat on the Board. Numerous steps were taken to prepare for the candidacy, including submission of voluminous materials to the SEC, extensive negotiations with N.S.P. regarding arrangements to mail its soliciting materials to the 100,000 shareholders, and the printing of some 200,000 envelopes to be used in the soliciting process. These substantial efforts required large commitments of volunteer resources from the various members of the Coalition.

4) N.S.P. has historically elected Directors each year for a one-year term. In February of 1973, there were 14 Directors. At the Board of Directors' meeting of February 28, 1973, the Board of Directors considered in detail a proposed draft proxy soliciting statement which contemplated the continuation of the 14 member Board. These draft materials made direct and substantial reference to Alpha Smaby and urged the shareholders to reject her candidacy.

5) N.S.P. engaged the proxy soliciting firm of Georgeson & Co. at a cost of $50,000 in funds over and above normal soliciting expenses, in an effort to oppose Alpha Smaby's candidacy.

6) Subsequent to the February meeting, the exact date is not known at this time, it was decided by the Directors of N.S.P. to reduce the number of Directors from 14 to 12 and to classify the Directors in groups of four for election to staggered terms of one, two and three years. Without the changes, just over 7% of the vote would be sufficient to elect one Director under the cumulative voting provision, but after the changes about 20% of the vote would be required. There was good reason to believe that Alpha Smaby might control up to 9% of the voting shares. Although the above changes were not formally approved by the Board of Directors until a special meeting was called on March 27, 1973, the proposed changes were submitted to the SEC approximately one week prior to the Board's formal approval.

7) N.S.P. candidly admits that such changes were not proposed because of long-term business considerations but that the changes were specifically aimed at the candidacy of Alpha Smaby. It is clear to the Court that the changes were instigated in an attempt to make her effort to win a seat on the Board more difficult and, in fact, were done to frustrate her efforts.

8) Although the parties were in constant contact, the defendants failed to inform the plaintiffs about the proposed changes in the coming election. Plaintiffs were informed by an agent of the

SEC on April 2 that some matter of great importance to the plaintiffs concerning the upcoming election was pending before the SEC. However, when plaintiffs contacted the defendants, they still refused to inform plaintiffs of the proposed changes. On April 7, the plaintiffs got their first notice of the proposed changes by way of a press release authorized by N.S.P. However, it was not until April 12, at the Order of this Court, that the details of the proposals were revealed to the plaintiffs.

It is plaintiffs' contention that the actions of the insiders in control of N. S.P., in proposing last minute changes in the structure of the Board of Directors and in using the proxy machinery for the purpose of frustrating Alpha Smaby's candidacy, amount to a violation of Section 14 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n, and the rules and regulations promulgated thereunder, as well as a breach of the fiduciary and contractual duties as imposed by state law. Secondly, plaintiffs specifically maintain that the proposed proxy statement is false and misleading in violation of Rule 14a–9. 17 C.F.R. 240.14a–9.

### JURISDICTION

■ Subject matter jurisdiction is premised on 15 U.S.C. § 78aa which provides as follows:

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Securities and Exchange Act of 1934 Section 27.

Since the state law claims arise out of a common nucleus of operative facts as do the federal claims, the Court may assert pendent jurisdiction over those claims. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

It is defendants' contention that the allegations in the complaint are unfounded, frivolous and are insufficient to invoke the jurisdiction of this Court. However, it is the Court's conclusion that the plaintiffs have clearly alleged violations of the Securities Act of 1934, that these allegations are not insubstantial and do, in fact, properly invoke the jurisdiction of this Court.

■ Without setting forth each of the alleged violations, looking to paragraph III under the heading, Cause of Action, it is alleged that the proxy statement is false and misleading. By affidavit, the plaintiffs specifically point out what in their opinion is false and misleading. It is the Court's determination that this allegation alone, which clearly is not frivolous, would be sufficient to invoke the Court's jurisdiction under Rule 14a–9,[1] 15 U.S.C. § 78aa.

### STANDING

Defendants have raised the issue of standing since some of the named plaintiffs, including the Coalition are not stockholders of N.S.P. Inasmuch as it is alleged in the pleadings and conceded by defendants that some of the plaintiffs are stockholders, defendants' objections as to the standing of particular plaintiffs shall be reserved and will be heard at a later date.

### CONCLUSIONS OF LAW

■ In Minnesota Bearing Company v. White Motor Corporation and White Farm Equipment Company, 470 F.2d 1323 (8th Cir. 1973), the Court of Appeals for the Eighth Circuit set forth

---

1. Rule 14a–9 prohibits the use by any person of "any proxy statement, form of proxy, notices of meeting or other communication, written or oral, containing any statement which is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. 240.14a–9.

the essential criteria necessary to justify the issuance of a preliminary injunction. The Court stated at p. 1326:

In order to justify the issuance of a preliminary injunction by the trial court, the movant has the burden of showing:

(1) substantial probability of success at trial by the moving party, and

(2) irreparable injury to the moving party absent such issuance.

Other factors which may be considered in the decision to grant or to deny the request are the absence of substantial harm to other interested parties, and the absence of harm to the public interest.

It is the defendants' position that the proxy statement does not contain false and misleading statements and that it is not only accurate but complete. Furthermore, the defendants maintain that their actions in changing the structure of the Board of Directors does not violate the laws of Minnesota and hence should not be enjoined.

It is the plaintiffs' position that the proxy statement does, in fact, contain false and misleading statements. Plaintiffs have set forth with specificity those sections of the proxy statement which they contest as being false and misleading. At this preliminary stage, the Court cannot and should not make a final determination as to the validity of these claims. More evidence and argument is necessary. However, it is the Court's conclusion that these claims are substantial and plaintiffs might well succeed on the merits.

Plaintiffs concede that the actions of the defendants do not violate any state statutory law but argue that the manipulation of the corporate machinery by insiders for the sole purpose of frustrating the candidacy of a minority shareholder in this instance violates both the federal Securities Law and is a breach of the insiders' fiduciary duty to the minority shareholders. Plaintiffs rely heavily on two Delaware cases which basically stand for the proposition

that actions by insiders, although otherwise lawful, may be enjoined if they act to injure the rights of minority shareholders. Condec Corporation v. Lunkenheimer, 230 A.2d 769 (Del.Ch.1967); Schnell v. Chris-Craft Industries, 285 A.2d 437 (Del.Supr.1971). In *Schnell* the Delaware Supreme Court held that management's efforts to use the corporate machinery and Delaware law for the purpose of perpetrating itself in office and obstructing legitimate efforts of the dissident stockholders in the exercise of their rights to undertake a proxy contest against management was impermissible. The insiders had advanced the date of the stockholders' meeting in an effort to frustrate the efforts of minority shareholders who desired to wage a proxy contest. The actions of the insiders were enjoined despite the fact that they were in compliance with the company by-laws and applicable Delaware law. The basis for these opinions rests on the fiduciary duty imposed on Directors and Officers of a corporation to deal fairly and justly with the corporation and all of its shareholders including minority shareholders. The Officers and Directors of N.S.P. are in a fiduciary relationship with the minority shareholders and as such owe them a duty to deal with them fairly and in good faith. Bisbee v. Midland Linseed Products Co., 19 F.2d 24 (8th Cir. 1927), cert. denied, 275 U.S. 564, 48 S. Ct. 121, 72 L.Ed. 428; Diedrick v. Helm, 217 Minn. 483, 14 N.W.2d 913 (1944).

In the instant case, the actions of the insiders, if not unfair, were certainly questionable in light of their fiduciary obligation to the plaintiff shareholders. Not only did the defendants change the rules in the middle of the game, but they refused to disclose the existence of the changes when approached by the plaintiffs. Both of these actions served to frustrate the plaintiff shareholders' legitimate efforts to run for the Board of Directors and may well be a breach of fiduciary duty. From the evidence adduced at the hearing, it is the conclusion of the Court that plaintiffs have estab-

lished a substantial likelihood that they will succeed on the merits.

As for the question of irreparable harm, plaintiffs have clearly shown that they will be irreparably injured if the defendants are not enjoined from proceeding with the proposed changes before the election of the Board of Directors. Plaintiffs have spent substantial sums of money and labor in preparing for the upcoming proxy battle. Plaintiffs expended these resources in the expectation that this election would be conducted in the same manner as such elections had been conducted since 1902. If the last minute changes proposed by defendants are not enjoined by this Court, plaintiffs maintain that their chance for success in their campaign will be eliminated and their efforts would have been wasted. The Court finds that they would, in fact, suffer irreparable injury unless an injunction is issued. Furthermore, it is not clear that an injunction would cause substantial harm to the defendants. Even if the plaintiffs were to succeed on the merits, the Court is not convinced that any injury would befall the defendants. Plaintiffs are seeking only that the Directors this year be elected in the same manner as they have been elected since 1902. The plaintiffs are not seeking any change in procedure, but merely to maintain the status quo. Naturally, the issuance of a preliminary injunction would cause inconvenience to the defendants and the expenditure of certain administrative sums of money, but this harm to the defendants is minor in comparison to the real damage that would otherwise be done to the plaintiffs. Furthermore, if the defendants choose to abandon their proposed changes and to allow the Board to be elected this year in the same manner that it has been elected every other year, there would be little harm to the defendants.

The public interest aspects of this case may prove to be quite important. N.S.P., as the provider of vital public services for a four-state area, is a unique corporation in that its position imposes upon it certain public responsibility and public duty. *See generally,* Herald Company v. Seawell, 472 F.2d 1081 (10th Cir. 1972). As a consequence, it may be that the motives and actions of the Directors and Officers must be scrutinized all the more carefully to insure that N.S.P.'s obligations to the public are carried out. In that sense, it would be in the public interest to enjoin the defendants' proposed changes until a final determination is made on the merits of this case.

Accordingly, based on the reasons as set forth above, IT IS ORDERED that the defendants shall cease all steps and activities in furtherance of the proposed changes in the number of Directors and the procedure for electing members to the Board of Directors of N.S.P. until further Order of this Court.

It is so ordered.