## In re INITIAL PUBLIC OFFERING SECURITIES LITIGATION.

### No. 21 MC 92(SAS).

United States District Court,
S.D. New York.

Nov. 28, 2001.

See also 174 F.Supp.2d 61.

**72**

**Plaintiffs' Liaison Counsel:** Melvyn I. Weiss, Esq., Ariana J. Tadler, Esq., Peter G.A. Saferstein, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Stanley D. Bernstein, Esq., Robert Berg, Esq., Rebecca Katz, Esq., Bernstein, Liebhard & Lifshitz, LLP, New York City, for plaintiffs.

**Additional Members of Plaintiffs' Executive Committee:** Daniel W. Krasner, Esq., Fred Taylor Isquith, Esq., Thomas Burt, Esq., Wolf, Haldenstein, Adler, Freeman & Herz, LLP, New York City, Richard S. Schiffrin, Esq., David Kessler, Esq., Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Howard Sirota, Esq., Saul Roffe, Esq., Sirota & Sirota, LLP, New York City, Jules Brody, Esq., Aaron Brody, Esq., Stull, Stull & Brody, New York City.

**Plaintiffs' Steering Committee:** Peter D. Bull, Esq., Joshua M. Lifshitz, Esq., Bull & Lifshitz, LLP, New York City, Steven E. Cauley, Esq., Randall K. Pulliam, Esq., Cauley Geller Bowman & Coates, LLP, Little Rock, AK, Christopher Lovell, Esq., Lovell & Stewart LLP, New York City, Stephen A. Weiss, Esq., David R. Buchanan, Esq., Mark Farkas, Esq., Seeger Weiss, LLP, New York City,

Robert I. Harwood, Esq., Frederick W. Gerkens III, Esq., Wechsler Harwood Halebian & Feffer LLP, New York City.

**Liaison Counsel for Defendants (Underwriters):** Gandolfo V. DiBlasi, Esq., Sullivan & Cromwell, New York City.

**Liaison Counsel for Defendants (Issuers):** Jack C. Auspitz, Esq., Morrison & Foerster LLP, New York City.

**Additional Counsel:** see Appendix.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

### I. INTRODUCTION

These actions represent a consolidation of unique proportions. Since January 2001, plaintiffs have filed more than 1,000 class actions in the Southern District of New York related to the Initial Public Offerings ("IPOs") of over 263 companies (the "Securities Actions"). In the broadest terms, the complaints allege that certain companies issuing stock to the public ("issuers"), their directors and officers, and those investment banks underwriting the IPO process ("underwriters"), violated federal law by manipulating the stocks' prices. Because these actions share some common issues, Chief Judge Michael B. Mukasey consolidated them for pretrial purposes and assigned the cases to this Court on August 9, 2001. *See* Order, *In re Initial Public Offering Sec. Litig.,* 21 MC 92 (Aug. 9, 2001) ("Transfer Order").

Of the more than 1,000 defendants, thirty-eight of the underwriters (the "Moving Defendants") now seek this Court's disqualification on various grounds raised under 28 U.S.C. § 455(a)–(b).[1] For the rea-

---

1. The movants initially consisted of all but two of the underwriters—Morgan Stanley Dean Witter & Co. and Dain Rauscher Inc. Since then, Legg Mason Wood Walker, Inc. and William Blair & Co., L.L.C. have withdrawn their support of the recusal motion. None of the issuers, their officers or their directors support the moving underwriters' motion. The plaintiffs and underwriter Mor-

sons that follow, the Moving Defendants' motion is denied.

## II. THE GOVERNING STATUTE

The disqualification of federal judges is governed by 28 U.S.C. § 455, which Congress enacted in two stages—the first in 1974, the second in 1988. Specifically, in 1974, Congress passed subsections (a)–(e), the relevant portions of which reads:

(a) Any justice, judge, or magistrate of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned.

(b) [She] shall also disqualify [her]self in the following circumstances:

(1) Where [she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; ...

(4) [She] knows that [she], individually or as a fiduciary, or [her] spouse or minor child residing in [her] household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding; ...

(5) [She] or [her] spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(a)–(b).

Section 455 thus provides two separate grounds for disqualification. Subsection (a) sets out a general standard requiring a judge to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), while subsection (b) lists a number of specific instances in which recusal is mandated. For example, if the judge "served as lawyer in the matter in controversy," she must disqualify herself from the proceedings. 28 U.S.C. § 455(b)(2).

In the words of the Supreme Court, "[t]he 1974 revision made massive changes" to the law of disqualification. *Liteky et al. v. United States*, 510 U.S. 540, 546, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).[2] Subsection (a) was the more significant change because it added "an entirely new 'catchall' recusal provision." *Id.* at 548, 114 S.Ct. 1147. By contrast, most of the revisions codified in subsection (b) "merely rendered objective and spelled out in detail the 'interest' and 'relationship'

gan Stanley Dean Witter & Co. have written briefs opposing the recusal motion.

**2.** "Before 1974, § 455 was nothing more than the then-current version of the 1821 prohibition against a judge's presiding who has an interest in the case or a relationship to a party. It read, quite simply:

Any justice or judge of the United States shall disqualify himself in any case in which

he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

*Liteky*, 510 U.S. at 546, 114 S.Ct. 1147 (citing 28 U.S.C. § 455 (1970)) (quotation marks omitted).

grounds of recusal that had previously been covered by § 455." *Id.*

Fourteen years later, Congress amended section 455 by adding subsection (f), which states:

> *Notwithstanding* the preceding provisions of this section, if any ... judge ... to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

28 U.S.C. § 455(f) (emphasis added). As the plain language, *i.e.,* "Notwithstanding", and legislative history of the subsection show, Congress did not intend to otherwise alter the statute by enacting subsection (f). The Moving Defendants correctly explain:

> Section (f)'s legislative history ... includes the statement that the provision was 'directed at a specific problem that has arisen ... in class action cases,' H.R.Rep. No. 100–889 (Aug. 26, 1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6029, and illustrates 'the problem' by citing and describing *In re Cement and Concrete Antitrust Litigation*, 515 F.Supp. 1076, 1080 (D.Ariz.1981), in which the judge was required to recuse because his wife owned stock in some of the parties .... Congress not only had a 'specific problem' in mind, it had a specific case in mind.

Moving Defendants' Reply Memorandum of Law in Further Support of Motion for Recusal Pursuant to 28 U.S.C. § 455 ("Reply Mem.") at 7–8.

## III.  LEGAL STANDARD

█ The trial judge herself must rule on a motion to recuse under section 455. *See In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir.1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify [herself]."); *see also Schurz Communications, Inc. v. FCC,* 982 F.2d 1057, 1059 (7th Cir.1992) (Posner, J.) ("Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge.") (quoting *United States v. Balistrieri,* 779 F.2d 1191, 1202–03 (7th Cir.1985)); *Lambert v. Blackwell,* No. 96 Civ. 6244, 2001 WL 410639, at *2 n. 2 (E.D.Pa. Apr. 20, 2001) ("It is well-established, if not entirely intuitive, that the resolution of such a motion is entrusted to the judge who is the subject of the motion.") (citation omitted).

The Second Circuit has explained that the reasons for this discretion are "plain":

> The judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion. In deciding whether to recuse [her]self, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning [her] impartiality might be seeking to avoid the adverse consequences of [her] presiding over their case. Litigants are entitled to an unbiased judge; not to a judge of their choosing.

*In re Drexel Burnham Lambert, Inc.,* 861 F.2d at 1312 (citation omitted).

█ Indeed, even if the parties do not move for recusal, section 455 creates an

independent duty requiring federal judges to evaluate in every case whether they should disqualify themselves. *See* 28 U.S.C. § 455 (stating that "[a]ny justice, judge, or magistrate of the United States *shall disqualify [her]self* in any proceeding" if certain conditions exist) (emphasis added); *United States v. Cerceda*, 139 F.3d 847, 852–53 (11th Cir.1998) (holding that "[a] judge is under an 'affirmative, self-enforcing obligation to recuse himself *sua sponte* whenever the proper grounds exist'"); *Aronson v. Brown*, 14 F.3d 1578, 1581 (Fed.Cir.1994) ("Section 455 is 'self-enforcing' in that it is self-executing."); *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir.1993) (holding that section 455 "commands the judge to disqualify [her]self *sua sponte*"); *Taylor v. O'Grady*, 888 F.2d 1189, 1200 (7th Cir. 1989) ("Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself *sua sponte* under the stated circumstances."); *In re Manoa Fin. Co.*, 781 F.2d 1370, 1373 (9th Cir.1986) (per curiam) (holding that "section 455 is stated in terms of a self-enforcing obligation upon the judge").

■ If section 455 applies, the judge must recuse herself. But if it does not apply, she should not recuse. As the Second Circuit has repeatedly held, a "judge is as much obliged not to recuse [herself] when it is not called for as [s]he is obliged to when it is." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d at 1312; *see also In re Aguinda*, 241 F.3d 194, 201 (2d Cir.2001). In making its determination, a court must remember that "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d at 201; *see also Southwestern Bell Tel. Co. v. FCC*, 153 F.3d 520, 523 (8th Cir.1998) ("Because the rules do not re-

quire my recusal, I am obliged to remain on the panel."); *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir.1988) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping.") (citation omitted); *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987) ("There is as much obligation for a judge not to recuse when there is no occasion for [her] to do so as there is for [her] to do so when there is.").

## IV. FACTS

### A. General Background of the Actions, the Consolidation and the Recusal Motion

Since January 12, 2001, plaintiffs have filed more than 1,000 class actions ("the Securities Actions") against 263 issuers, 42 underwriters and hundreds of individuals: over 1,000 defendants in total. Each of these Securities Actions alleges "widespread manipulation of IPOs and IPO aftermarkets, including nondisclosure of commissions and other compensation, undisclosed pre-arranged 'tie-in arrangements,' and the issuance of misleading analyst reports." Memorandum of Law in Support of Motion for Recusal Pursuant to 28 U.S.C. § 455 ("Moving Mem.") at 5 (quoting various portions of the Complaints in *In re VA Linux Securities Litigation*, 01 Civ. 0241 and *In re Calico Commerce Securities Litigation*, 01 Civ. 2601 (collectively "Securities Complaints")). The proposed classes in these actions include every investor who purchased the common stock of the company from the date it initially issued stock until December 2000. *Id.* at 6 (citing various Securities Complaints).

In related actions pending before the Honorable William H. Pauley, III, plain-

tiffs have brought nine separate antitrust actions alleging that the "defendants manipulated the prices of securities brought to market in the IPOs traded in the aftermarkets" (the "Antitrust Actions").[3] *Id.* (quoting Antitrust Compl. ¶ 57). The manipulated securities may include "as many as 1,000 IPOs," and the putative class includes " 'all persons who purchased any of the Manipulated Securities in the aftermarket of IPOs conducted by defendants from March 1997 through the present.' " *Id.* (citing Antitrust Compl. ¶¶ 57–58, 67 and quoting Antitrust Compl. ¶ 59). In the words of the Moving Defendants, "[t]he actions attack the integrity of the fundamental capital formation function of the nation's investment banks with the charge that IPOs were manipulated and distorted by unlawful industry-wide practices .... [T]he litigation calls into question the very legitimacy of the United States securities markets." *Id.* at 2.[4]

Hundreds of the Securities Actions had been assigned to many judges in this district. In an effort to coordinate pretrial matters and to avoid taxing the limited judicial resources of this district, the Assignment Committee of the Court decided to consolidate all of the Securities Actions. The August 9, 2001 Transfer Order directed that all of the Securities Actions be transferred to this Court for "coordination and decision of pretrial motions, discovery and related matters other than trial." 8/9/01 Transfer Order.

## B. The Status of the Consolidated Actions

While a great deal of organizational time and effort has been expended, this Court has not made any substantive decisions. In preparation for the mass transfer of cases in early August, I supervised administrative staff in organizing the unprecedented amount of simultaneous filings of class actions (each naming multiple parties). I also held numerous meetings with other judges, the District Executive's Office, the Clerk of the Court and his staff, and the Court's Computer Department. Extra staff was added to handle these matters.

I also prepared and issued a multi-page Case Management Order, which required hundreds of case management submissions and the processing of those submissions. *See* 8/8/01 Order. A detailed Case Management Agenda was prepared for the first Case Management Conference, which was attended by hundreds of attorneys. *See* 9/7/01 Tr. at 13 (referencing and describing agenda). Hundreds of lead plaintiff and lead counsel motions have been filed. The Court assisted in the formation of a Plaintiffs' Executive Committee, Steering Committee and the selection of Plaintiffs' Liaison Counsel.

Finally, this Court has also addressed a number of smaller matters, such as deciding which cases should be part of this massive consolidation and which fall outside the consolidation and should be assigned to a different judge.[5] In addition to

---

3. These cases are now consolidated under the caption *In re Initial Public Offering Antitrust Litigation,* 01 Civ. 2014(WHP). Moving Defendants cite to the most recently filed case, *Thomas et al. v. Credit Suisse First Boston Corp. et al.,* 01 Civ. 5919(WHP)(the "Antitrust Compl.").

4. As of today, Moving Defendants have made no inquires of Judge Pauley regarding his investment activities or how he conducted his

conflict check. The parties have presumably been cautious in order to avoid causing Judge Pauley to duplicate the efforts that this Court has expended on this motion. *But see* 10/2/01 Tr. at 15–16.

5. I have also signed many orders permitting the appearance of counsel *pro hac vice* and consolidating cases by issuer.

the pending motions for the selection of lead plaintiffs and lead counsel, there is now a fully submitted motion addressing discovery issues.[6] A Case Management Conference is scheduled for December 7, 2001, at which time the parties will address such topics as the possible selection of test cases and the scheduling of anticipated motions to dismiss.

## C. The Court's Alleged Conflicts

### 1. Defendants' Stocks

Prior to the consolidation, I was presiding over eight cases involving an IPO for Internet Capital Group. In July 2001, I notified the parties that I had purchased this stock on August 4, 1999, and sold it on August 5, 1999 at a small profit. I also notified the parties that I was opting out of membership in any class action involving that IPO. *See* 7/18/01 Tr. at 4. No party sought the Court's recusal based on this disclosure.[7]

On August 3, 2001, aware that hundreds of cases would be reassigned shortly, I provided written notification to the parties in two actions involving the IPO for Breakaway Solutions. In that notice I informed the parties that I purchased that stock in

July 2000 and sold it on August 1, 2001, at a loss. I also opted out of membership in any class action involving that IPO. The notice asked any counsel who "objects to this Court retaining jurisdiction of these cases" to notify the Court in writing within 10 days. 8/3/01 Order ("August 3rd Order"). No party registered any objection or sought the Court's recusal based on this disclosure.[8]

After the hundreds of cases were reassigned to this Court pursuant to the August 9, 2001 Transfer Order, and after I issued the first Case Management Order and held the first case management conference, certain defendants asked to meet with me regarding potential conflicts. At that meeting, which was attended by liaison counsel for plaintiffs, issuers and underwriters, I was asked to identify my broker (and my husband's broker) and to describe how I intended to check for any current conflicts.[9] After considering this inquiry, I decided that the parties should check for conflicts due to the extraordinarily large number of disclosure statements filed pursuant to Rule 1.9 of the Joint Local Civil Rules for the Southern and Eastern Districts of New York.[10] I

---

**6.** The plaintiffs' self-imposed filing deadline for additional cases is December 6, 2001. This deadline is presumably related to the fact that the Wall Street Journal published an article describing the underlying allegations a year earlier. *See* Susan Pulliam & Randall Smith, "Trying to Avoid the Flippers," *Wall St. J.*, Dec. 6, 2000, at A1.

**7.** Indeed, counsel for some of the plaintiffs argued that "there is no conflict under the PSLRA, there would be no financial interest that you had in the recovery here, because you made money instead of losing." 7/18/01 Tr. at 13.

**8.** The August 3rd Order was sent to plaintiffs' counsel who were asked to forward it to counsel for the following defendants: Goldman, Sachs & Co., BancBoston Robertson Stephens, Inc. and FleetBoston Robertson

Stephens, Inc., Credit Suisse First Boston Corp., Salomon Smith Barney, Inc., Lehman Brothers Inc. and Lehman Brothers Holdings, Inc., Merrill Lynch & Co., Inc. and Merrill Lynch Pierce, Fenner & Smith Inc., Deutsche Banc Alex.Brown, and Morgan Stanley Dean Witter. All but one of these defendants is now moving for recusal.

**9.** Underwriters and issuers selected their liaison counsel prior to the first case management conference and that selection was approved at the conference. Plaintiffs made a suggestion for the appointment of liaison counsel, but because there were some objections, liaison counsel was not appointed until a later date.

**10.** Local Civil Rule 1.9 states: "To enable judges and magistrate judges of the court to evaluate possible disqualification or recusal,

therefore prepared redacted versions of my Financial Disclosure Forms for 1998 through 2000 and sent a packet to each liaison counsel.[11]

The Moving Defendants identified what they perceived to be one previously undisclosed conflict. At the time of their conflict check, I owned stock in Infospace.com. According to Moving Defendants, this stock was implicated in *Klein v. Merrill Lynch*, 01 Civ. 7654, one of the Securities Actions, because the allegations in *Klein* relate to the IPO of a security called "Internet Infrastructure Holdrs".[12] As explained in the complaint, this security is a "basket securit[y]" which "represent[s] an undivided beneficial ownership interest in 20 specified internet infrastructure companies (the 'Underlying Securities')." *Klein* Compl. ¶ 2. The price of each Internet Infrastructure Holdrs security "was directly related to, and moved

with, the price of the Underlying Securities." [13] *Id.*

Two of the Underlying Securities that comprise Internet Infrastructure Holdrs are Infospace.com and Kana Communications.[14] *See* Moving Mem. at 9, 10 n.10. The complaint in *Klein*, however, does not define the plaintiff class to include purchasers of constituent stocks. *See Klein* Compl. ¶ 12. Moreover, Internet Infrastructure Holdrs, Kana Communications, and Infospace.com are not named as defendants in that action. *See id.* ¶¶ 6–11. And while Kana Communications is a defendant in several other Securities Actions, I never purchased stock in that company. Rather, I purchased stock in Broadbase Software, Inc., which later merged with Kana Communications, Inc. to create Kana Software, Inc.[15] Infospace.com, whose stock I did purchase, is not named as a defendant in any of the Securities Actions.

counsel for a private (non-governmental) party shall submit at the time of filing the initial pleading or other court paper on behalf of that party a certificate of identification of any corporate or other parents, subsidiaries, or affiliates of that party, securities or other interests in which are publicly held."

11. These forms list approximately sixty financial interests annually, reflecting a diverse portfolio.

12. The IPO was commenced by Internet Infrastructure Holdrs Trust, an entity formed under a depository trust agreement among depositors and owners of the Internet Infrastructure Holdrs. *See Klein* Compl. ¶ 18. The Trust is not named as a defendant in the complaint. *See id.* ¶¶ 6–11.

13. Plaintiffs take the position that Internet Infrastructure HOLDRS is a common investment fund which is exempted by 28 U.S.C. § 455(d)(4)(i), which states that "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates

in the management of the fund." *See* Plaintiffs' Memorandum of Law in Opposition to Moving Underwriter Defendants' Motion for Recusal Pursuant to 28 U.S.C. § 455 ("Pl. Mem.") at 9 n.8.

14. The Moving Defendants cite the following allegations from the Complaint: " 'Merrill Lynch and other underwriters of some of the underlying securities in the Internet Infrastructure Holdrs Trust Portfolio entered into illegal tie-in arrangements in connection with the initial public offerings of the underlying securities that had the effect of maintaining the price of the underlying securities at artificially inflated levels.' " Moving Mem. at 10 (quoting *Klein* Compl. ¶ 21).

15. The Moving Defendants note that one of the complaints against Kana Communications defines the class as "all persons and entities who purchased, converted, exchanged, or otherwise acquired the common stock of Kana from the effectiveness of the Offering on September 21, 1999 through August 31, 2001 ...." Moving Mem. at 10 n.12 (quoting Complaint in *Kassin v. Kana Communications* ¶ 18).

In response to these disclosures, of which I was unaware at the time of the reassignments in August, I immediately sold my stock in Kana Communications and Infospace.com and again waived any interest in pursuing any claims with respect to these purchases. *See* 9/30/01 Notice to All Counsel; 10/1/01 Waiver.

## 2. Other "IPO" Stocks

The Moving Defendants also assert that my past and present ownership of stocks that were sold through IPOs from 1997 through 2000 creates a conflict because (a) these stocks may be among the "1,000" stocks referred to as potentially Manipulated Stocks in the Antitrust actions, or (b) these stocks may become the subject of future actions.[16] The Moving Defendants supplied a list of ten IPO stocks (other than the four previously discussed) that I purchased at some time beginning in 1997.[17] *See* Moving Mem at 10 n.11. Seven of those stocks were sold prior to the filing of any of these actions. I still hold two of

these stocks. The remaining stock merged with Hewlett–Packard, Co., which did not issue an IPO during the relevant time period, is not a party to these actions, and is a company in which I held stock prior to the merger. Five of the fourteen purchases resulted in realized gains; six resulted in realized losses; and the three that are still held now have less value than when they were purchased.[18]

## 3. The Judge's Family

During a series of telephone conferences held to discuss the questions raised by the recusal motion, the Moving Defendants informed me that they had reviewed my adult son's brokerage statement without his permission or mine. *See* 9/28/01 Tr. at 8–11; 10/2/01 Tr. at 6, 16–17. Based on their review of his financial statements, the Moving Defendants stated that my son owned stock in one of the issuer defendants. I did not know of his ownership and never asked the Moving Defendants to identify the stock.[19] My son contacted the

---

**16.** In response to the Court's request, the Moving Defendants submitted a letter dated October 10, 2001, in which they set forth their view of the "subject matter in controversy." The Moving Defendants wrote: "The subject matter in controversy here includes, at a minimum, the method by which IPOs in high technology and related stocks were brought to market from as early as March 1997 onward. Plaintiffs have alleged an industry-wide conspiracy or practice by all of the underwriter defendants to manipulate the prices for IPO stock. The complaints separately and together put in issue every IPO that occurred between March 1997 and the date complaints were filed. Accordingly, while most of the coordinated cases concern only a single issuer, a judge who purchased any IPO stock during the alleged class period may, based on the broad allegations of the complaints, have an interest in the subject matter in controversy." 10/10/01 Letter from Gandolfo V. DiBlasi, Underwriters' Liaison Counsel, to Hon. Shira A. Scheindlin at 5. The Moving Defendants propose that any newly assigned judge be given a CD–ROM listing all of the 1,000

IPOs from March 1997 to date. If the judge bought any of those stocks within the class period, he or she should be disqualified *See* Moving Mem. at 4–5.

**17.** None of these are defendants in any of the Securities Actions.

**18.** The details of these purchases and sales are summarized in "Stock Price History," Ex. 1 to Reply Mem. The Exhibit is not entirely accurate, however, as it does not reflect the Court's sales of Kana Communications and Infospace.com in October 2001.

**19.** 28 U.S.C. § 455(b)(5)(iii) states that recusal is required if a person within the third degree of relationship to the judge: "[i]s *known* by the judge to have an interest that could be *substantially affected* by the outcome of the proceeding." *Id.* (emphasis added); *see also* Canon 3C(1)(d)(iii) of the *Code of Conduct for United States Judges* (a judge shall disqualify herself when she knows that a person within the third degree of relationship "is

counsel who raised the subject, asked that the stock be identified, sold the stock and waived any interest in participating in any action arising from that investment. *See* 10/2/01 Tr. at 6. I have never learned the identity of that stock.

### 4. Relationship with Broker

The Moving Defendants base part of their argument on comments the Court made during the course of judicial proceedings. The comments that Moving Defendants cite were made at a July 18, 2001 conference concerning the Internet Capital cases:

> All I know is that the broker called and said this is a good stock [to] buy and I said sure, then the next day she called and said this is a good stock [to] sell and I said sure. That's it. Sad to say, very sad to say, I don't read anything that I should read. And that's the end of it. So I know nothing .... I think I probably am not in the class by definition anyway, because I made money, and if I was in it, I don't want to be in it, I opt out, and I don't know anything other than there is that name on the list of things that were bought and sold that year—who has a problem? ... I know nothing. I read nothing. Nobody tells me anything. I am really one of those sad investors. The brokers call, I say ["]yes, good-bye["]; they say ["]sell["], I say ["]yes, good bye.["] I regret all of my yesses for all these past few years. Every one was a mistake. But that is what I know.

7/18/01 18 Tr. at 5–6. At a later conference, in these consolidated actions, the Court clarified its remarks when the Moving Defendants referenced them.

Right. And to get specific[,] to discuss that it would be everything that has gone down, which as far as I can tell is techs and everything else I bought[.] [S]ome of my worst losers were REITs. I was absolutely creamed in REITs from the broker, KMart, Elder Trust, [C]orporate [O]ffice [P]roperties, there was a whole slew of that. I apparently just am not talented at this in general and would not pick a stock ever again of any variety. So, I say that again[,] and I say it broadly, whether it was REITs, whether it was techs, whether it was blue chips, I regret every [']yes[']'.

9/26/01 Tr. at 10.

## V. DOES SECTION 455 ALLOW A COURT TO REMOVE POTENTIAL CONFLICTS AT THE BEGINNING OF A PROCEEDING?

A threshold question that this Court must address is whether 28 U.S.C. § 455 allows a court to preside over a case if it promptly removes a conflict at the outset of a proceeding. For example, if a judge owns stock in a company that may be substantially affected by litigation, may she sell the stock and continue to preside? *See, e.g.,* Jason Hoppin, "Judge's Sale Avoids Conflict," *Nat. L.J.,* June 25, 2001, at B1. Or must that judge permanently disqualify herself because subsection (b)(4) states that a judge shall disqualify herself if she knows that she "*has* ... [an] interest that could be substantially affected by the outcome of the proceeding"? 28 U.S.C. § 455(b)(4) (emphasis added).

█ For the reasons that follow, the answer is the former: Under section 455, if a judge is assigned a case in which she has a financial or other curable conflict,

---

*known* by the judge to have an interest that could be substantially affected by the outcome of the proceeding"); *Compendium* § 3.2–1(b) (judge must keep informed of financial holdings of her spouse and minor children but "[w]ith respect to other relatives, the judge *has no such duty.*").

she may continue to preside if she promptly eliminates it.

### A. Section 455

I begin with the statute. For purposes of this case, the relevant subsection states:

(b) [A Judge] shall also disqualify [her]self in the following circumstances:

(4) [She] knows that [she] . . . *has* a financial interest . . .

(5) [She] or [her] spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) *Is* a party to the proceeding, or an officer, director, or trustee of a party; . . .

28 U.S.C. § 455(b)(emphasis added).

The statute makes it clear that a judge may not knowingly preside while a disqualifying interest exists. "It is not apparent however whether the statute covers the situation where the judge *had* a financial interest in a party, without knowing it; divested [her]self of the interest as soon as [she] discovered it; and made no rulings between the date of discovery and the date of divestment." *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 714 (7th Cir.1986) (Posner, J.). The text of the statute—standing alone—does not answer the question of whether a court may preside over a case if it promptly sells or removes a financial conflict in a party or the case and waives its status as a potential party.[20]

But if "words are chameleons, which reflect the color of their environment," *Commissioner v. Nat'l Carbide Corp.*, 167 F.2d 304, 306 (2d Cir.1948), then the meaning of section 455 is not difficult to discern. The legislative history of the statute and subsequent case law interpreting the statute show that courts may eliminate disqualifying interests upon being assigned a case and thereby continue to preside.

### B. Legislative History and Case Law Pre–1988

In 1974, Congress sought to solve a problem. Section 455, as it then read, stated: "Any justice or judge of the United States shall disqualify himself in any case in which he has a *substantial* interest . . . ." 28 U.S.C. § 455 (1970) (emphasis added). The problem was the word "substantial." While the majority of judges would not sit on a case if they had any financial interest, a minority of judges held that a de minimus financial interest did not qualify as "substantial" and therefore they were not required to recuse themselves. *See, e.g., Kinnear–Weed Corp. v. Humble Oil & Refining Co.*, 403 F.2d 437, 440 (5th Cir.1968) (holding that owning 100 of 36,000,000 shares of defendant did not require disqualification); *Lampert v. Hollis Music, Inc.*, 105 F.Supp. 3, 5 (E.D.N.Y. 1952) (holding that owning 20 of 13,881,016 shares of defendant did not require recusal).

Critics of the "substantial interest" test gave two reasons why it should be rejected. *First*, they raised the question as to whether a judge could constitutionally preside over a case in which it owned a financial interest in light of *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749

---

**20.** The Second Circuit has warned courts that "the surest way to misinterpret a statute or a rule is to follow its literal language without reference to its purpose." *Viacom Int'l, Inc. v. FCC*, 672 F.2d 1034, 1040 (2d Cir.1982). Likewise, "where the obvious purpose of the statute is thwarted by slavish adherence to its terms, we may look beyond the plain meaning." *United States v. Hendrickson*, 26 F.3d 321, 336 (2d Cir.1994) (quotation marks and citation omitted).

(1927).[21] *See Hearings Before the Sub-committee on Improvements in Judicial Machinery of the Senate Committee of the Judiciary*, 92nd–93rd Cong. 102 (1971) and (1973) ("Senate Hearings") (testimony of Professor Thode). *Second*, the critics argued that "substantial" was inherently ambiguous. For example, 100 shares of AT & T stock might not be substantial if measured against the total stock in the corporation. *See Kinnear–Weed Corp.* 403 F.2d at 440. But the stock might appear quite significant if measured against the assets of the judge or the average person. In the view of many, the result was an erosion of confidence in the judicial system because, from the public's perspective, judges were sitting on cases in which they had a significant interest. The purpose of the revision "[was] just to make sure that judges [did] not sit in cases in which they have a financial interest, however small." *Union Carbide*, 782 F.2d at 714.

The legislative history of section 455 also shows that a judge could remove a disqualifying interest at the beginning of a case and continue to preside. As Senator Quentin Burdick, Chairman of the Senate Judiciary Committee, explained to the Senate when introducing the bill:

[This bill] would amend the Federal statute—section 455 of title 28—by making it conform, with two exceptions, to the same standards of disqualification as set forth in the Code of Judicial Conduct. Thus, both the statutory and the ethical standards for disqualification will be virtually identical. The most signifi-

cant provision in these new standards would require a judge to disqualify himself in any case in which he *has* a financial interest, however small, in the proceeding. Under the existing statute, disqualification is required for a 'substantial' financial interest. With respect to this change, the issue is very simple: For example, if the financial interest is but a few shares of stock in a corporation, such a small holding is probably but a small part of the judge's investments and *there would be no great loss to him if he should decide to change that investment in order to eliminate any possible · grounds of disqualification.* On the other hand, if the number of shares represents a large investment no one could question that ownership of such shares requires disqualification.

119 Cong. Rec. 33,029–30 (daily ed. Oct. 4, 1973) (statement of Sen. Burdick) (emphasis added). In other words, while some thought it unwise to have a zero-tolerance standard,[22] the natural rebuttal was that a judge who had a financial interest in the subject matter or a party could always dispose of it at the outset and remain on the case. This comment was echoed in commentary outside of Congress as well:

Adherence to the per se rule seems the best approach. It is justified first of all on the basis of administrative ease .... Equally important, a strict per se rule will not work a great hardship against a judge, for if the interest is so small that no reasonable man could suspect bias,

---

21. In *Tumey*, the Supreme Court had held "[t]hat officers acting in a judicial or quasi judicial capacity are disqualified by their interest in the controversy to be decided is of course the general rule," 273 U.S. at 522, 47 S.Ct. 437, and thus invalidated a provision that gave a quasi-judicial officer the right to recover a fee for his services only if he found the defendant guilty.

22. As one Congressman argued in opposition to the proposed statute, we could have a "true Daniel come to judgment—or a Learned Hand upon the bench ... [and] he absolutely could not sit, even though both parties to the cause preferred him" and he only owned a paltry interest. H.R.Rep. No. 93–1453, at 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6363.

the judge can easily divest himself of the interest rather than disqualify himself. Note, "Disqualification of Judges and Justices in the Federal Courts," 86 *Harv. L.Rev.* 736, 752 (1973).

At the time, it was acceptable to remove a disqualifying interest by, for example, selling one's stock in a party at the beginning of a case. "Prior to 1974, the majority rule appears to have been that ... a judge could properly sell a financial interest *in order to continue presiding* over a case and avoid unnecessary delays of litigation." *In re Industrial Gas Antitrust Litig.*, No. 80 Civ. 3479, 1985 WL 2869, at *1–2 (N.D.Ill. Sept. 24, 1985)(emphasis added); *see also* "Disqualification of a Judge in Pending Case as Subject to Revocation or Removal," 162 A.L.R. 641, 642 (1946) ("[T]he doctrine prevailing under the common law, and also under most of the statutes, is that disqualification by reason of pecuniary or propriety interest ... may be removed after the inception of the action or proceeding with the effect of rendering it proper for the judge to reassume jurisdiction in the case.").

Nor was it unheard of: "On more than one occasion [Chief Justice Stone] sold substantial investments in order that he would not have to disqualify himself." Alpheus Thomas Mason, *Harlan Fiske Stone: Pillar of the Law* 702 (1956) (quotation marks and citation omitted). Far from criticized, Chief Justice Stone's behavior was "a model for the most fastidi-

ous." *Id.* at 703 (citing John P. Frank, "Disqualification of Judges," 56 *Yale L.J.* 605, 605 (1947)).[23] Likewise, the Senate Hearing includes the following account in its record, which apparently occurred at the outset of the case before the judge had made substantive decisions:

> U.S. District Judge Miles Lord may have taken a loss in domestic tranquility on a stock sale made Thursday.
>
> The stock he sold belonged to his wife, and he didn't have time to consult her on the decision, since he was on the bench at the time the decision was made. Judge Lord was presiding at a hearing on a suit against Northern States Power Co. (NSP) by a consumer organization when he recalled that Mrs. Lord owned some NSP stock.
>
> He briefly considered dropping the case, but since time was important to the contestants in the suit, he decided instead to get rid of the stock. Judge Lord ordered his secretary to call his broker and sell at the going price, whatever it might be. She did.
>
> Later, when it appeared that a settlement of the case might be possible, Judge Lord surveyed the attorneys for both parties in the case and said, 'I hope my wife will forgive me.'
>
> The settlement try failed however, and the case went on.

---

23.  *See also* John P. Frank, "Conflict of Interest and U.S. Supreme Court Justices," 18 *Am. J. Comp. L.* 744, 761 (1970) (discussing briefly the problem of judges owning stock and stating that "a rich man may be a just judge as Brandeis and Stone bear witness"). Professor Frank's views are not insignificant. He was considered to be "one of the leading, if not the leading, expert in the whole business of judicial disqualification." Senate Hearings at 13 (Sen. Bayh). Professor Frank was a principal drafter, working and testifying on the proposed legislation extensively, *see id.* at 32–68, 113–119, and was thanked by Senator Burdick for his "tremendous help" and "yeoman's service." *Id.* at 118. A review of Professor Frank's work shows that he did not object to judges removing conflicting interests rather than disqualifying themselves. In addition to authorities already cited, see John P. Frank, "Disqualification of Judges: In Support of the Bayh Bill," 35 *Law & Contemp. Prob.* 43 (1970).

Judge Lord said that his wife acquired the stock in 1951, when he was a law student.

Senate Hearing at 167 (quoting from the *Minneapolis Tribune*, March 1973 [prior to the court acting on the request for a temporary restraining order]); *see also Coalition to Advocate Pub. Util. Responsibility, Inc. v. Engels*, 364 F.Supp. 1202, 1203–04 (D.Minn.1973) (stating that Judge Lord was considering a preliminary injunction to stop defendants from soliciting shareholder proxies and that the parties had previously appeared "on *April 12, 1973*, at which time a temporary restraining order was issued.") (emphasis added).

Silence often has no meaning—but sometimes silence means that there is such a widespread acceptance of a practice that it is beyond question. Nothing in the legislative history of section 455 shows that *anyone* objected to judges selling their interest and remaining on a case, even though it was an obviously known practice. This Court has not found any case or article that objected to the practice at the time. In fact, the comments by Senator Burdick and others show that when anyone did discuss the possibility of a judge selling stock or otherwise removing a disqualifying interest at the beginning of a case, it was argued that this practice was a *major reason* to accept the strict standard prohibiting a court from sitting on a case when it *has* an interest, no matter how small.

Nor has this Court found a single case between 1974 and 1988 that interpreted section 455 to mean that a judge could not remove or cure a disqualifying conflict as long as she did so promptly (*i.e.*, she had not made substantive rulings). *See, e.g., In re Placid Oil Co.*, 802 F.2d 783, 786 (5th Cir.1986) ("The first ground for disqualification urged by Petitioners is Judge Sanders' business dealings with counsel for one of the Banks. Since the time Petitioners filed their briefs with this court, however, the counsel in question has withdrawn from the case. Thus, any necessity for recusal on this ground ... has now been removed."); *In re New Mexico Natural Gas Antitrust Litig.*, 620 F.2d 794, 795 (10th Cir.1980) (holding that recusal was inappropriate when, among other things, judge "stated he could and would opt out as a class member to avoid receipt of any potential refund"); *S.J. Groves & Sons Co. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local 627*, 581 F.2d 1241, 1248 (7th Cir. 1978) (holding that district judge did not abuse discretion in concluding that his impartiality could no longer reasonably be questioned once brother's firm withdrew as plaintiffs' counsel); *cf. In re Estate of Odineal*, 220 Neb. 168, 368 N.W.2d 800, 804 (1985) ("When the cause for disqualification in the first instance has been removed, a judge may assume supervision and jurisdiction in the case."); Judicial Conference of the United States, Committee on Codes of Conduct, Advisory Opinion No. 69 (1981) ("[I]f a judge learns of a disqualifying financial interest in a party before expending judicial time on the case, the judge may avoid disqualification by divesting ... herself of the interest.").[24]

---

24. "In matters of judicial ethics [courts] are bound to give some weight to the view of the committee of judges that the Judicial Conference of the United States has established to advise federal judges on ethical questions." *Union Carbide*, 782 F.2d at 715. *See also Perpich v. Cleveland Cliffs Iron Co.*, 927 F.Supp. 226, 231 (E.D.Mich.1996) ("While the Advisory Committee is not empowered to render opinions on the law and may only interpret the ABA Code of Judicial Conduct, Congress intended § 455 to conform generally to the Code. Therefore, although not controlling, the Advisory Committee's opinion is entitled to some weight.") (citations omitted).

The only opinion this Court has found expressing the opposite view prior to 1988 is the *dissenting* opinion in *Union Carbide*. *See Union Carbide Corp.*, 782 F.2d at 717 (Flaum, J., dissenting). In *Union Carbide*, after more than two years of presiding over the suit, Judge Susan Getzendanner married a man who owned around $100,000 of stock in two corporations that were unnamed class plaintiffs. *See id.* at 713. When it became known that the Judge's spouse owned an interest in a party, Union Carbide moved for recusal. *Id.* In response, Judge Getzendanner "ceased ruling on any motions in the case" while her husband sold the stock. *Id.* After the parties briefed the issue of whether section 455 required her to disqualify herself, Judge Getzendanner held that selling the stocks cured any disqualifying interest and she continued to preside over the case. *See id.*

On appeal, the dissenting judge took the position that Judge Getzendanner should have disqualified herself permanently because "section 455(b) is absolute in language and contains no provision for cure." *Id.* at 717 (Flaum, J., dissenting). "The statute does not provide a 'sell or disqualify' option, as Judge Getzendanner herself noted in her thoughtful analysis." *Id.* In Judge Flaum's view:

> A straight-forward reading of the statute would suggest that at the time a judge is made aware of a disqualifying interest, he falls squarely into the mandatory directives of section 455(b). Read this way, it appears that the lack of any specific mention in 455(b) of divestiture is due to Congress's recognition of the fact that 455(b) encompasses

every conceivable situation in which divestiture is relevant, since at the point at which the judge knows that he 'has' an interest, the section directs the judge to step down.

*Id.*

Writing for the majority, Judge Posner held that the words of the statute did not make it clear whether section 455 covered the situation in which the disqualifying interest was terminated prior to making any substantive rulings—that is, where the court *had* a disqualifying interest that was promptly removed. *See id.* at 714. *Union Carbide* held:

> We must of course consider the purpose as well as the bare words of the statute. But the purpose as we have said is just to make sure that judges do not sit in cases in which they *have* a financial interest, however small. Judge Getzendanner *has* no financial interest in this case. If she were to rule in favor of the plaintiffs it could not put a nickel in her pocket, because neither she nor her husband own securities of any member of the plaintiff class. Before she discovered she had a financial interest, she could have had no incentive to favor the plaintiffs; when she knew she had such an interest, she made no rulings in the case; · now, when she has no interest, she cannot enrich herself by favoring the plaintiffs. *The statutory purpose would not be served by forcing her to recuse herself.*

*Id.* (emphasis added).[25] The majority therefore held that section 455 did not require a judge to disqualify herself if she

---

**25.** Judge Posner also wrote: "It is no surprise that the legislative history contains no indication that Congress would have wanted a judge to recuse [her]self in such a case." *Union Carbide*, 782 F.2d at 714. After reviewing the legislative history of the statute, this Court agrees with this statement with one caveat: The legislative history does, in fact, point in the opposite direction and shows that at least some Congressmen thought a judge should not recuse herself if she sold her stock.

had terminated the disqualifying interest *promptly.*

### C. Legislative History of Subsection (f)

In 1988, Congress amended section 455 by adding subsection (f). The Moving Defendants agree—as they must—that Congress enacted subsection (f) to solve a specific problem and that Congress did not otherwise intend to change the law of disqualification. In fact, "Congress not only had a 'specific problem' in mind, it had a specific case in mind." Reply Mem. at 8.

That case was *In re Cement and Concrete Antitrust Litigation,* 688 F.2d 1297 (9th Cir.1982), which involved twenty-one antitrust lawsuits brought in various district courts alleging industry-wide price fixing against cement and concrete manufactures. *Id.* at 1300. In 1977, the cases were transferred to the District of Arizona by the Judicial Panel on Multidistrict Litigation and assigned to Judge Muecke for pretrial purposes. *See id.* "Early in 1979, Judge Muecke certified a nationwide class of public and private cement producers and two statewide governmental entity classes," which included over 210,000 members. *Id.* at 1299–1300. "Judge Muecke actively presided over the pretrial proceedings [from 1977] through January of 1981, during which time he entered over 75 pretrial orders, ruled on countless motions, supervised the substantial completion of the discovery process, approved the master class list, and gave notice to class members that they could opt out of the class by written request prior to December 31, 1980." *Id.* at 1300.

Two weeks after the class was certified, on January 12, 1981, several of the defendants advised Judge Muecke that comparing his 1980 financial disclosure reports with the names on the master class list showed that his wife owned approximately $50,000 of stock in seven of the 210,235 class members, most of whom were corporate entities. *Id.; see also In re Cement & Concrete Antitrust Litig.,* 515 F.Supp. 1076, 1083 (D.Ariz.1981).

The defendants therefore asserted that Judge Muecke was under a per se obligation to disqualify himself under subsection (b)(4). After receiving extensive briefing, oral argument on two occasions, and input from the Advisory Committee on Codes of Conduct of the Judicial Conference of the United States, Judge Muecke agreed and recused himself. *See In re Cement,* 515 F.Supp. at 1078.

The problem Judge Muecke faced was precisely the one that Congress contemplated when it enacted section 455: Over the course of five years, Judge Muecke had run afoul of section 455 because his spouse had owned a financial interest ("no matter how small") in the parties. Indeed, Judge Muecke had made over 75 pre-trial orders as well as certified the class in such a fashion as to include the conflicting parties.

Under the logic of section 455, as enacted by Congress in 1974, Judge Muecke was required to recuse himself based on the fact that he had decided numerous motions while in a state of conflict. While Judge Muecke likely did not know about the stock or that it conflicted with seven of 200,000 parties, the court was bound to conclude that Judge Muecke had made rulings that substantially impacted the course of the litigation (*e.g.,* class certification) and, as a result, impacted his financial interest. All of this raised an inference of impropriety and there were simply no steps that Judge Muecke could take to *retroactively* cure or otherwise alleviate the impropriety of his actions.

This was, of course, an absurd result and in 1988 Congress amended the statute to fix it:

*Notwithstanding* the preceding provisions of this section, if any ... judge ... to whom a matter has been assigned *would be disqualified, after substantial judicial time* has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate, bankruptcy judge, spouse or minor child, as the case may be, *divests himself or herself of the interest* that provides the grounds for the disqualification.

28 U.S.C. § 455(f) (emphasis added). In other words, generally courts may not take steps to cure those inferences of impropriety raised because they made significant rulings while owning a conflicting interest. Once this happens, the proper remedy is recusal. Subsection (f), however, creates an exception to this rule as it relates to "financial interests in a party," which usually means owning stock in a litigant. If a conflicting status has been discovered "after substantial judicial time" and the judge "would be disqualified," a court may take steps to *retroactively* cure those problems by divesting itself of the financial interest.[26]

Significantly, nothing in subsection (f) affected the ability of a court to take steps *prospectively* to eliminate a potential conflict. At the time Congress passed section 455, courts could at the beginning of a case remove all conflicting interests (*e.g.*, sell its stocks, waive its class membership). Likewise, if the judge acquired a conflicting interest in the middle of the litigation, she could sell the interest and preside over the case as long as she had "made no rulings between the date of discovery and the date of divestment." *Union Carbide*, 782 F.2d at 714. Section 455(f) simply added one more safety valve: If, after substantial judicial time, the court discovered that it would be disqualified because it had decided numerous motions that substantially affected the course of the litigation, it could cure the problem *retroactively* by immediately divesting the interest.

## D. Developments After 1988

Today, courts continue to take steps at the beginning of a case to remove disqualifying interests and continue to preside over a case. Recent opinions issued by the Committee on the Codes of Conduct make it clear that this remains an appropriate course of action. "[I]f a judge learns of a disqualifying financial interest in a party before expending judicial time on the case, the judge may avoid disqualification by divesting ... herself of the interest." Judicial Conference of the United States, Committee on Codes of Conduct, Advisory Opinion No. 69 (reissued in 1998). Likewise, "[a] judge who opts out of the class need not recuse from a class action." *Code of Conduct for United States Judges, Compendium* § 3.1–6[4](e); *see also* Judicial Conference of the United States, Committee on Codes of Conduct, Advisory Opinion No. 90 (1998) ("All members of the class are parties whether named or unnamed, *so long as they have not opted out of the class*.") (citing *Compendium* § 3.1–6[4](a) (1997)) (emphasis added); *Compendium* § 3.1–6[4](c) ("If a judge or any person within the third degree of relationship remains a member of a class entitled

---

26. Of course, if that financial interest would have been "substantially affected by" the litigation, 28 U.S.C. § 455(f), the inference of

impropriety is presumably too great to overcome.

to receive damages as a customer of a public utility, the judge should recuse. However, if the judge and such persons within the third degree of relationship opt out of the class, the judge is not required to recuse merely because of the judge's status as a utility customer . . . .").[27]

Few published opinions, however, have discussed a court's ability at the outset of a case to take steps to remove disqualifying interests. This absence of discussion may reflect the fact that such a well-established proposition hardly warrants a written opinion. *See, e.g., Litwin v. American Exp. Co.*, 838 F.Supp. 855, 857 n. 1 (S.D.N.Y.1993) (stating that Judge Mukasey, his wife, and two children signed and filed a statement opting out of a class action against American Express, a defendant in that case); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 311 n. 15 (N.D.Ga.1993) ("The Court and all of its relatives within the third degree necessarily elected to exclude themselves from the settlement class.").

Despite the dearth of discussion, recent examples of courts removing disqualifying interests are not hard to find, especially in cases involving large class actions where reassignment is not a preferable option. Less than two months ago, newspapers widely reported that "[t]he judge taking over in the Microsoft Corp. antitrust trial sold significant shares in technology companies this year, including stock worth $45,000 to $165,000 in four companies that played key roles in the case." Ted Bridis, "New Microsoft Judge Sold Her Tech Stocks," *Associated Press*, Oct. 25, 2001, *available in* 2001 WL 29336995. Specifically, to avoid any potential conflicts "U.S. District Judge Colleen Kollar–Kotelly sold all her family's technology holdings." *Id.*

Similarly, earlier this year, Judge Dennis Montali "sold hundreds of thousands of dollars in stock he owned in several large Pacific Gas & Electric creditors" rather than disqualify himself from presiding over Pacific Gas & Electric's bankruptcy case. Hoppin, "Judge's Sale Avoids Conflict" at B1. "As soon as he was assigned the case, he immediately undertook steps to sell those stocks, and he sold them before any of the parties made any appearances in this case and before he made any decisions in this case." *Id.* (quoting law clerk for Judge Montali). Moreover, "Judge Montali's stock sales are completely aboveboard, said both a legal ethics expert and a representative from the Administrative Office of the U.S. Courts (AOC)." *Id.*

This Court has found only two cases after 1988 squarely holding that disqualifying interests are *incurable* even if discovered and removed at the beginning of a case. In *Tramonte v. Chrysler Corp.*, 136 F.3d 1025 (5th Cir.1998), the Fifth Circuit held that at the beginning of a case "disqualification becomes automatic from the

---

27. The following test should apply to any judge sitting on the IPO cases, whether it be the securities or antitrust cases, and whether it be for pretrial consolidation or upon reassignment to the original judge for trial. That judge should determine whether it now owns any of the stocks in issue. If the judge does own such stocks, the judge should be permitted to divest that interest if the judge so desires. If the judge does not wish to divest, the judge must recuse. The judge should also determine whether he or she purchased any of the 1,000 IPOs at any time during the class period. If the judge did make such purchases, the judge is permitted to waive class membership if he or she desires. Obviously, if the judge does not wish to waive class membership, the judge must recuse. Finally, the judge is required to recuse if he or she knows that a relative within the third degree of consanguinity owns an interest that could be substantially affected by the outcome, or is a class member who does not wish to waive class membership. A judge is not required to make inquiry of such relatives with respect to their current holdings or trading history.

moment a judge discovers her financial interest in the litigation; relinquishment of that interest at any point after discovery is no remedy." *Id.* at 1031. Likewise, the court in *Gordon v. Reliant Energy, Inc.,* 141 F.Supp.2d 1041 (S.D.Cal.2001), recused itself at the beginning of the case in reliance on *Tramonte.*

But *Tramonte* is wrong—and its fatal misstep is easy to see if one remembers that in enacting subsection (f) "Congress not only had a 'specific problem' in mind, it had a specific case [*In re Cement*] in mind." Reply Mem. at 8. *Tramonte* states:

> [The appellee] contends [that] Judge Lemmon's stated intent to opt out of any certified class ends any disqualifying interest, pointing to *Union Carbide Corp. v. United States Cutting Serv.*, 782 F.2d 710 (7th Cir.1986) .... Subsequent statutory developments, however, have substantially undercut the majority rationale in *Union Carbide.* The dissent in *Union Carbide* argued that the provisions of § 455(b)(4) are absolutist; as soon as a judge becomes aware that she has a financial interest in a case, that judge must disqualify herself immediately .... Congress partially adopted the *Union Carbide* dissent's position in its 1988 amendments to § 455 .... Logically, therefore, divestment should only be an effective way to escape recusal if a judge has already devoted 'substantial judicial time' to a case.

**28.** The holding of *Tramonte* also suffers because it does not address the advisory opinions of the Committee on Codes of Conduct stating that judges may opt out of class actions and thereby continue to preside over a case.

**29.** This distinction has common law roots. *See generally* "Disqualification of a Judge in

*Tramonte,* 136 F.3d at 1031. But no one— not the plaintiffs, not the underwriters, and certainly not this Court—believes that Congress passed subsection (f) in response to *Union Carbide* or even "partially adopted" the views expressed in that decision. Rather, Congress's unequivocal purpose was to overturn the holding of *In re Cement.*

*Tramonte's* misreading of the legislative history of subsection (f) is pivotal given that *In re Cement* and *Union Carbide* had quite different holdings, as the panel in *Union Carbide* and Congress seemingly recognized.[28] It is true, of course, that the cases have some similar facts. Both *Union Carbide* and *In re Cement* involved recusal motions raised after a judge had presided for a number of years, and both cases focused on a spouse's ownership of stock that could be easily sold.

The critical difference between the cases is this: In *Union Carbide* the judge had not made any rulings that impacted the course of the litigation between the date she acquired the disqualifying interest and the date of divestment. *See Union Carbide,* 782 F.2d at 714. In contrast, the judge in *In re Cement* had decided 75 pretrial orders as well as certified the class so as to include the party in which his wife owned stock. Thus, while the judge in *Union Carbide* could take steps to *prospectively* cure any potential problems, the judge in *In re Cement* could do nothing *retrospectively* to fix his disqualifying interest.[29]

Pending Case as Subject to Revocation or Removal," 162 *A.L.R.* 641, 644 (1946) ("Certain cases, without denying the possibility of removing grounds of disqualification, have held that under the particular circumstances in question the disqualifications were not removed, or *at least were not removed in time.*") (emphasis added).

Indeed, despite the factual similarity, Judges Posner and Flaum apparently thought *In re Cement's* holding so inapposite to the issue before them it was not discussed or even cited in the opinion or dissent. *See Union Carbide,* 782 F.2d at 710–17 (Posner, J.); *id.* at 717–18 (Flaum, J., dissenting). This was no accident; Judges Posner and Flaum did not overlook a leading circuit court opinion on the issue of recusal that was cited in the lower court's opinion. *See In re Industrial Gas Antitrust Litig.,* 1985 WL 2869, at *1–*2 (discussing *In re Cement,* a case of "almost identical circumstances," but holding that in her situation "disqualification could be cured by divestment of the stock"). Rather, Judges Posner and Flaum seemingly shared the understanding that the holding of *In re Cement* (that a court must recuse itself if it has presided with a conflicting financial interest for a number of years) had no bearing on the issue of whether a judge could preside over a case if she terminated her disqualifying interest *before* making any substantive rulings.[30]

The legislative history does not indicate that anyone in Congress believed that the two cases were similar either—*Union Carbide* was simply not perceived to be a problem. Thus, if any conclusion can be drawn about Congress's intent in 1988, it must be that it approved of *Union Carbide*—otherwise Congress could have overturned it just as it overturned *In re Cement.* Either way, *Union Carbide,* as well as its underlying rationale, is still good law.

### E. Summary

The only support for the argument that a court may not promptly remove a conflict at the beginning of a case is found in *Tramonte* and its quite sparse progeny. Because *Tramonte's* understanding conflicts with Congress's intent in 1974 and 1988, subsequent case law, and the well-respected opinions of the Committee on Codes of Conduct, the argument based upon it (that disqualifying conflicts are incurable) must be rejected.

Courts may always take measures at the outset of a proceeding to remove potential conflicts. The fact that those conflicts exist when the court is assigned the case does not taint the proceedings. Likewise, if the conflict arises in the middle of the litigation, courts do not need to recuse themselves as long as they act promptly to rectify the situation. But if a court presides over a case while maintaining a conflict of interest, it must disqualify itself—not because it could not preside in the future without having a conflict, but because it cannot retroactively repair the damage. Subsection (f) provides one exception to this rule: If the conflict involves a financial interest in a party, then a court may divest itself of the interest retroactively in order to remain on the case.

In this case, the Court has promptly removed any potential conflicts. From the very beginning, it has sold any financial interest in a party and waived any class membership in the actions. With this in mind, the Court now turns to the relevant

---

**30.** Likewise, at least one district court in the Ninth Circuit, which was bound by *In re Cement's* holding, followed *Union Carbide* and held that *"prospective* disqualification is not required ·because Judge Ingram has divested himself of his interest in [the defendant]." *NEC Corp. v. Intel Corp.,* 654 F.Supp. 1256 (N.D.Cal.1987), *order vacated on other grounds, appeal dismissed,* 835 F.2d 1546 (9th Cir.1988) (emphasis added). Like the judges in *Union Carbide* and Congress, the court in *NEC Corp.* apparently found *In re Cement* so inapplicable to the issue of whether the court could *continue* to hear the case once the financial conflict was removed that the case was not discussed. *See NEC Corp.,* 654 F.Supp. at 1258 (citing *In re Cement*).

sections of 455 and the Moving Defendants' arguments.

## VI. MOVING DEFENDANTS' ARGUMENTS

The Moving Defendants argue that recusal is required under four provisions of the statute:

- 455(b)(4), because the Judge is known to have 'a financial interest in the subject matter in controversy' and is known to have a 'financial interest . . . in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding' . . .;

- 455(b)(5), because the Judge is 'a party to the proceeding' and is known to have 'an interest that could be substantially affected by the outcome of the proceeding' . . .;

- 455(b)(1), because the Judge has 'personal knowledge of disputed evidentiary facts' arising out of her investment experience and losses . . .; and

- 455(a), because the Judge's 'impartiality might reasonably be questioned' in light of her own losses on some of the securities at issue . . . .

Moving Mem. at 3. I will consider each argument, and the relevant subsection of 28 U.S.C. § 455, in turn.

### A. Subsection (b)(4)

Three separate interests are contemplated under subsection (b)(4): (1) "financial interest in the subject matter in controversy," (2) financial interest "in a party to the proceeding," or (3) "any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). A " 'financial interest' means ownership of a *legal or equitable interest, however small,*" 28 U.S.C. § 455(d)(4) (emphasis added), with certain statutory exceptions.[31]

In this case, the stock previously held by this Court was a financial interest in an issuer defendant and an issuer identified in one complaint. *See Kidder, Peabody & Co. v. Maxus Energy Corp.,* 925 F.2d 556, 561 (2d Cir.1991); *Key Pharm., Inc. v. Mylan Labs. Inc.,* 24 F.Supp.2d 480, 482 n. 2 (W.D.Pa.1998). I will also assume, *arguendo,* that this Court's status as a putative class member qualified as a "legal or equitable interest, however small," 28 U.S.C. 455(d)(4)(i), in "the subject matter in controversy."[32] *See Tramonte,* 136 F.3d at 1030; *Gordon,* 141 F.Supp.2d at 1043.

█ I have removed both of these conflicts. Given this Court's previous analysis, *see supra* Part V, this Court may not disqualify itself on the grounds that it once owned stock in three defendants or was a

---

**31.** For example, "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest.' " 28 U.S.C. § 455(d)(4)(i). Unfortunately, Congress did not otherwise provide definitions of those interests that might disqualify a court from presiding over a case.

**32.** I note, however, that there may be problems with this assumption. *First,* putative, by definition, means the Court was only a *potential* class member. Whether this Court actually had a "legal or equitable interest" at such an early stage might be disputed given that bare expectancies usually have little weight in the law. *Second,* the phrase "subject matter

in controversy" might not extend to class actions. As one judge complained: "I find the term 'subject matter in controversy' to be inherently vague." *In re Cement,* 515 F.Supp. at 1080. "While it obviously applies to *in rem* proceedings, Congress has not indicated whether it is limited to such proceedings and, if it is not, how far the term extends." *Id.* (citations omitted). A review of the legislative history shows that "[t]he authors of § 455 apparently did not contemplate class actions." *In re City of Houston,* 745 F.2d 925, 928 n. 5 (5th Cir.1984); *see also In re Cement,* 515 F.Supp. at 1080.

putative class member.[33]

Thus, the only remaining question under subsection (b)(4) is whether this Court currently holds "any other interest that could be *substantially* affected." 28 U.S.C. § 455(b)(4) (emphasis added). Besides continuing to own stock in two companies that conducted their IPOs during the relevant four-year period (and are *not* defendants in these actions), the Court also holds financial interests in many other publicly traded companies. The Defendants have failed to establish—and the Court does not see—how the outcome of this litigation will have any direct effect on any of the Court's remaining financial holdings.

The fact that two of the stocks currently owned by the Court were issued to the public during the class period has no meaning. The plaintiffs' self-imposed deadline expires in approximately one week (December 6, 2001). At that time, every company not yet sued will be free from even the *fear* of a lawsuit. A loss or a win for either side in this case will have no discernable effect on my current portfolio. Like other courts, I am "unwilling to adopt a rule requiring recusal in every case in which a judge owns stock of a company in the same industry as one of the parties to the case." *In re Placid Oil Co.*, 802 F.2d at 786; *see also Union Planters Bank v. L & J Dev. Co., Inc.*, 115 F.3d 378, 382 (6th Cir.1997); *Gas Util. Co. of Alabama, Inc. v. Southern Natural Gas Co.*, 996 F.2d 282, 283 (11th Cir.1993); 13A Charles A. Wright, Arthur R. Miller &

Edward H. Cooper, *Federal Practice and Procedure*, 2001 Supplement, at § 3547.

On the other hand, if the Moving Defendants' argument is that the outcome of this case could affect the public's perception of the integrity of the stock markets, then any negative effect resulting from these suits will fall equally on all shareholders of all publicly traded companies. All judges have interests, either directly or indirectly, in publicly traded companies. There has simply been no showing that this litigation will have any direct effect that will "substantially affect" *this* Court's holdings. *See In re New Mexico Natural Gas*, 620 F.2d at 796 ("In view of the statutory requirement that interests must be substantially affected before recusal is required, we believe Congress did not intend to require disqualification in all cases in which the judge might benefit as a member of the general public.").

Because the Moving Defendants have failed to show that the Court has anything more than a "remote, contingent, or speculative" interest in this litigation, disqualification may not be granted under section 455(b)(4). *Hook v. McDade*, 89 F.3d 350, 356 (7th Cir.1996); *In re Drexel Burnham, Inc.*, 861 F.2d at 1313; *In re Placid Oil Co.*, 802 F.2d at 787.

**B. Subsection (b)(5)**

The Moving Defendants argue that this Court was a "party to the proceeding" under subsection (b)(5)(i) because it was once a putative class member.[34] Those

---

**33.** The Moving Defendants speculate that suits may yet be brought. If that happens, I am prepared to divest those holdings and waive any interest in pending class actions involving those companies or disqualify myself. *See supra* Part V.

**34.** Of course, if the class were already certified and it included this Court, the Court would be "party to the proceeding." *See In*

*re Cement*, 688 F.2d at 1315; *cf. Guide to Judiciary Policies and Procedures*, v.2, ch. IV, pp. 207–08, Advisory Opinion No. 90 (June 15, 1999) ("The Committee adheres to its previous position that Rule 23(b)(3) class members are 'parties' for purposes of Canon 3(c)(1)(d)(i)."); *id.* (ch. V) at 21 ("For recusal purposes, every member of the class in a class action is deemed to be a party."); *id.* (ch. V)

courts to have considered whether *potential* class members qualify as "part[ies] to the proceeding" under subsection (b)(5) have repeatedly held that they do not. *See, e.g., Tramonte,* 136 F.3d at 1030 (holding that "members of a putative class are not 'parties' to a class action for these purposes [under section 455(b)(5)]"); *New Orleans Pub. Serv. v. United Gas Pipe Line Co.,* 719 F.2d 733, 735 (5th Cir.1983) (holding that judges are not disqualified if they are only putative class members); *LeRoy v. City of Houston,* 592 F.Supp. 415, 419 (S.D.Tex.1984) ("If nothing more, to hold a judge to be a 'party' in any situation where he was a member of a potential class would do violence to the rules governing class actions .... The interests of a potential member of a class are too 'uncertain' to justify holding those potential members to be parties under § 455."); *see also Federal Practice and Procedure* § 3548 n.5 ("Members of a putative class are not 'parties' for purposes of 28 U.S.C. § 455(b)(5).").

The issue is moot, of course, because I have waived my status as a potential class member. Because this Court was at no time a party to the proceeding, it may not disqualify itself under subsection (5) on this ground. *See supra* Part V.

█ I must also consider one other conflict under subsection (b)(5). The Moving Defendants reviewed my adult son's financial statements (without his permission or mine), and disclosed during a telephone conference that he owned stock in one of the issuers. At the time, they argued that this created a conflict although they no longer appear to argue that this results in a disqualification under subsection (b)(5).[35] As a result of their investigation and disclosure, however, I now know that my adult son owned stock in a party and was once a putative class member.

Subsection (b)(v)(iii) states that a judge shall recuse herself when "a person within the third degree of relationship" is "known by the judge to *have* an interest that could be substantially affected by the outcome of the proceeding." In this case, the interests that my son owned that could have been affected by the case were (1) his stock and, perhaps, (2) his legal interest as a putative class member. Because he promptly sold his stock and waived his class membership rights, I may not disqualify myself under subsection (b)(5).[36] *See supra* Part V.

## C. Subsection (b)(1)

Under subsection (b)(1), a judge shall recuse herself if she has "personal knowledge of *disputed* evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1) (emphasis added). The Moving Defendants make much ado about my "experience as an investor in IPOs generally and in several IPO securities identified in the complaints." Moving Mem. at 25. In their view, this Court "has knowledge of facts that would be characteristic of investors who bought in the same or similar circumstances." *Id.* at 27.

---

at 26 ("All members of the class are parties, whether named or unnamed so long as they have not opted out of the class.").

**35.** However, the Moving Defendants have argued I must recuse under section 455(a) because I "addressed an adult son's ownership of stock in a security at issue, his sale of that interest and his waiver of claims identical to those being asserted by the plaintiffs." Mov-

ing Mem. at 28. I consider this argument below.

**36.** Nor do I need to determine whether the interest would have been "substantially affected" because my son no longer *has* any interest and sold or waived whatever interest he had prior to this Court making any substantive rulings. *See supra* Part V.

This argument says nothing more than that this Court was, at one time, one of millions of putative class members. Yet, it only stands to reason that if "[a] judge who opts out of the class *need not recuse* from a class action," *Code of Conduct for United States Judges, Compendium* § 3.1–6[4](e) (emphasis added), the personal knowledge the Court may have gained while a potential class member cannot disqualify it. Nor do I have knowledge of any *disputed* facts, as the statute requires. Surely everyone agrees that at least some putative class members bought stock solely on the advice of their brokers.

As one underwriter *opposing* the recusal motion has argued:

> Judge Scheindlin has apparent personal knowledge that certain stocks were taken public (perhaps even that they were taken public by one or more of the underwriter defendants), and that she lost money on some of her stock purchases and gained on at least one other. But none of these issues is a matter of *disputed* fact. Instead, the *disputed* facts here are whether the defendants illegally manipulated IPOs or the post-IPO market, as plaintiffs allege, through so-called "excess commissions" or "tied-in purchases" of stock—allegations that Morgan Stanley joins with the other defendants in vigorously disputing. There is no indication that Judge Scheindlin has any personal knowledge about any alleged efforts to require "excess commissions" or "tied-in purchases" in exchange for IPO allocations. Nor is there any indication that Judge Scheindlin has any personal knowledge about the defendants' IPO allocation process in general, IPO allocations for particular stocks, or aftermarket transactions of those who received IPO allocations, much less any disputed issues of fact on these subjects.

Morgan Stanley's Submission in Response to Motion for Recusal ("Morgan Stanley Submission") at 4 (emphasis original).

The Moving Defendants' threshold for personal knowledge of disputed facts is so low that any judge who ever received a phone call from a broker recommending an IPO stock—even if that judge did not buy it—would be disqualified. This argument, if adopted, would require every judge, and perhaps their broker, to be questioned as to whether they had ever discussed an IPO stock. Moreover, any judge who read one of the many articles on this lawsuit would have far more knowledge of the case than I received from my broker's phone calls. *See, e.g.,* Noelle Knox et al., "Officials suspect IPO manipulation," *USA Today,* Aug. 21, 2001, at B1; Carol Vinzant, "Public Offering, Private Deal," *Wash. Post,* July 17, 2001, at H1; Pulliam & Smith, "Trying to Avoid the Flippers," *Wall St. J.,* Dec. 6, 2000, at A1.[37]

Examples of recusal decisions under subsection (b)(1) show that the threshold is much higher than Moving Defendants contend. *Compare United States v. Boyd,* 208 F.3d 638 (7th Cir.2000), *vacated on other grounds,* 531 U.S. 1135, 121 S.Ct. 1072, 148 L.Ed.2d 949 (2001) (holding that district judge was not required to recuse himself from case on ground that he had personal knowledge of disputed evidentiary facts even though he had been head of state police during investigation of business connected to defendants' gang because judge did not have full knowledge of details of investigation); *Easley v. University of Michigan Bd. of Regents,* 906 F.2d

---

**37.** In fact, the Pulliam & Smith article seems to have a played a critical role in this litigation. *See supra* note 6.

1143, 1147 (6th Cir.1990) (holding that because judge had not acquired actual or constructive knowledge of any material facts while serving on law school's Committee of Visitors judge was not disqualified from discrimination lawsuit) *with Murray v. Scott*, 253 F.3d 1308 (11th Cir. 2001) (holding that judge should have recused himself based on fact that, while serving as government attorney, he had appeared as counsel of record in action in which corporation was party, possibly giving him knowledge of facts disputed in instant action); *United States v. Alabama*, 828 F.2d 1532, 1544–45 (11th Cir.1987) (holding that judge was disqualified from presiding where he had "actively participated in the very events and shaped the very facts that are at issue" by helping pass the discrimination law as a state senator and serving as an attorney for individual plaintiffs in a school desegregation case).

■ Because this Court has no knowledge of "*disputed* evidentiary facts" 28 U.S.C. § 455(b)(1) (emphasis added), it may not disqualify itself under subsection (b)(1).

### D. Section 455(a)

The Moving Defendants' final argument is that this Court's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Specifically, they argue that a reasonable person might question the impartiality of a judge who:

1. as an active investor in IPO stocks in the relevant period, personally suffered financial injury . . . in the securities that the complaints allege were manipulated by the defendants;

2. personally dealt with one of the defendants and relied on that defendant's recommendations . . . ;

3. expressed sadness and regret . . . ;

Moving Mem. at 28. They further argue that my impartiality might be questioned because I:

4. attempted to divest all conflicting interests by selling several securities at a loss and by waiving multiple claims;

5. addressed an adult son's ownership of stock in a security at issue, his sale of that interest and his waiver of claims identical to those being asserted;

6. strove to continue presiding.

*Id.*

■ The last three points raised by the Moving Defendants barely merit comment. Of course I took steps to remove all conflicting interests and otherwise "strove" to continue presiding: As a judge, I have a responsibility not only to litigants in this case but also to the other judges of this district to hear the cases that I am assigned. It makes no sense to argue that an appearance of impropriety arose because I took steps to remove any conflict that I might have had in the case. As one underwriter who "does not join in—and does not support—the motion for recusal" stated:

> Here, the facts are that Judge Scheindlin sold stocks that may be at issue in order to avoid any appearance of impropriety, and has renounced any class membership or claims similar to those in question. These actions indicate only that Judge Scheindlin is acting scrupulously to avoid any potential financial interest in the litigation; they do not suggest in any way that she is partial to one side or the other.

Morgan Stanley Submission at 1, 5.

■ These same thoughts bear repeating with regard to the fact that I "addressed" my son's potential interest in

these lawsuits. In addition, I note that Section 455(a) was "designed to promote public confidence" in the judicial process. H.R.Rep. No. 93–1453 at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6354. Public confidence would, in fact, be severely undermined if judges did *not* take action whenever litigants, *themselves,* created a conflict under section 455 by disclosing a family member's financial interest without permission. More than once, Congress has considered giving litigants peremptory strikes that would allow them to disqualify a judge at their choosing. *See generally* Senate Hearings. However, Congress has repeatedly rejected this idea, and until it amends section 455 to say otherwise, I reject it as well.

In contrast, the Moving Defendants' other three points do warrant consideration. Accordingly, I turn now to the test this Circuit has created to determine whether a judge's impartiality might reasonably be questioned. That test "requires a showing that would cause 'an objective, *disinterested observer* fully informed of the facts [to] entertain *significant doubt* that justice would be done absent recusal.'" *In re Aguinda,* 241 F.3d at 201 (quoting *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992)) (emphasis added).[38]

Applying this standard requires "reasoned judgment"—it "is not mechanical." *In re Aguinda,* 241 F.3d at 201. By way of comparison, other provisions of the statute establish bright-line tests under which the judge is faced with a choice of either removing the disqualifying conflict or recusing herself. For example, when Congress fully considered judges' financial interests, it passed section 455(b)(4), forbidding a judge from presiding in a case in which she has any financial interest, no matter how small.

In contrast, section 455(a) was passed to serve as a "catchall," *see Liteky,* 510 U.S. at 548, 114 S.Ct. 1147, for those situations *not* considered by Congress.[39] This judgment cannot be quantified; an exact measure does not exist. Rather, this Court must exercise its discretion by applying its

---

**38.** Moving Defendants argue that "Movants and thousands of their public shareholders, employees, clients and customers with a keen interest in the outcome of these proceedings can reasonably be expected to raise just those questions [concerning the judge's impartiality]." Moving Mem. at 29. Of course, this group does not qualify as "disinterested observer[s]." *In re Aguinda,* 241 F.3d at 201. Moreover, one might note, that over two hundred issuers, and hundreds of their directors and officers, together with four major underwriters, do not appear to share these concerns.

**39.** A review of Second Circuit cases shows how courts employ this "catchall" subsection to decide situations not addressed elsewhere in the statute. *See, e.g., In re Aguinda,* 241 F.3d at 199, 206–07 (holding that judge did not abuse discretion in denying recusal based on fact that judge attended an expense-paid seminar, which was sponsored by organization that had received minor funding from an oil company); *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 944–45 (2d Cir.1998) (holding that judge did not abuse discretion in declining recusal based on "supported assertion that the judge's former husband, while an employee of [a party], had engaged in improper business practices that led to termination of his employment by [the party], a criminal conviction, and disbarment"); *United States v. Morrison,* 153 F.3d 34, 47–48 (2d Cir.1998) (holding that judge did not abuse discretion in declining recusal based on allegation that her former husband had an adversarial business and personal relationship with the defendant, arising from the defendant's frustration with certain business projects conducted by judge's husband); *United States v. Pitera,* 5 F.3d 624, 626–27 (2d Cir.1993) (holding that judge did not abuse discretion when declined recusal based on the fact that seven months before trial she gave lecture at Organized Crime Drug Enforcement Task Force conference).

experience and reason to fairly predict whether the hypothetical disinterested observer would "entertain significant doubt that justice would be done absent recusal." *In re Aguinda,* 241 F.3d at 201.[40]

■ The Moving Defendants' first argument, that this Court is a failed IPO investor, says nothing more than that this Court was once a potential class member in these class actions. But if a court may waive its putative class membership in a case and continue to preside (as the majority of those judges to consider the question have held) then that very same status should play no role under section 455(a). Congress already fully considered how courts should handle financial interests in a party or a case in subsection (b).[41] Section 455(a) was passed to serve as a catch-all for situations not covered by the rest of the statute, not to duplicate those grounds for disqualification.[42]

■ The Moving Defendants' second point—that this Court has employed a broker—is equally specious. While this Court has a broker who provides recommenda-

tions, any "personal knowledge of disputed facts" was already fully considered under subsection (b)(1). It is beyond cavil that these same facts cannot mandate recusal under subsection (a).

■ The third problem relates to certain comments I expressed during the proceedings. *See supra* Part IV (quoting comments in full). These comments only reveal that I was disappointed whenever I lost money—whether it involved IPOs, REITs, oil companies, or other stocks. *See* 9/26/01 Tr. at 10. I am certainly not alone when I say losing money is sad. These comments simply fail to "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147; *see also United States v. Diaz,* 176 F.3d 52, 112 (2d Cir.1999) (holding that "events occurring in the course of judicial proceedings do not constitute a basis for recusal unless they indicate that the judge has a deep-seated favoritism or antagonism that would make fair judgment impossible.") (quotation marks omitted).[43]

---

**40.** I also note that, as the statute's plain language shows, there must be one standard applicable to all judges throughout the country. Thus, the fact that I sit in a large district may not play a role in my application of the statute. *See Mass v. McClenahan,* No. 93 Civ. 3290, 1995 WL 106106, at *1 (S.D.N.Y. Mar. 9, 1995) ("At first blush, it might appear that the easy answer in a court consisting of as many judges as we have in the Southern District of New York would be for me to step aside and refer this matter for reassignment. However, as the courts have recognized, the issue with respect to recusal is *not* the convenience of the judge, who should agree to recusal only when it is truly required to do so. A judge has as much of a duty not to recuse [her]self absent a factual basis for doing so as [s]he does to step aside when recusal is warranted.").

**41.** Indeed, subsection (b) is already so stringent that, in the opinion of some, it covers

situations in which it would be *un*reasonable to question a court's impartiality. *See Union Carbide,* 782 F.2d at 714 ("[Subsection (b)(4) ] results in recusal in cases where the interest is too small to sway even the most mercenary judge . . . .").

**42.** Proof of this assertion is the fact that neither the Moving Defendants nor this Court have identified any case requiring disqualification under subsection (a)—or, for that matter, rejecting it—based on stock ownership.

**43.** The Moving Defendants cite cases that are easily distinguishable. For example, in *In re Boston's Children First,* 244 F.3d 164 (1st Cir.2001), the judge made *extrajudicial* statements to the press regarding the merits of the pending lawsuit. This conduct also warranted recusal of the trial judge in *United States v. Microsoft,* 253 F.3d 34, 107–17 (D.C.Cir.2001) and in *In re International Bus. Mach. Corp.,* 45 F.3d 641 (2d Cir.1995).

Moreover, as the Moving Defendants point out, I did not lose money on *every* IPO. In fact, four of the IPO stocks in my portfolio *increased* in value as of October 1, 2001 or the date I sold them. *See* Reply Mem., Ex. 1 (stating that four stocks had positive increases of 58%, 55%, 33%, 5%).[44]

The final problem with the Moving Defendants' argument was well stated by Judge Posner when he wrote: "[I]t is one thing to assume that judges are human beings with the usual human emotions and another to attribute to them a malevolent, a calculating, vindictiveness." *Union Carbide*, 782 F.2d at 716. The Moving Defendants' argument only has strength if one presumes that all the steps I have taken to avoid even the appearance of impropriety are nothing more than an attempt to extract vengeance. There is no basis for such an accusation.

A fully informed disinterested observer would thus consider the following facts in this case:

> The Judge has consistently informed the parties of any conflicts and acted scrupulously in taking prompt steps to remove conflicts from the outset of the proceedings, including those created by the Moving Defendants.

> The Judge once expressed the quite natural feeling of sadness with regard to any investment in which she lost money.

> The Judge (like presumably most judges) used a broker to make her investments, including investments in some IPO stocks.

I conclude that an " 'objective, disinterested observer,' " would not entertain any doubts that would be significant. *In re Aguinda*, 241 F.3d at 201. Because this Court's impartiality may not reasonably be questioned, this Court may not disqualify itself under section 455(a).[45]

## VII. CONCLUSION

In conclusion, I direct the parties to the following remarks submitted by Congressman Kastenmeier during the House Committee hearings in 1974.

> No judge, of course, has a duty to sit where [her] impartiality might be reasonably questioned. However, the new

---

**44.** In their reply papers, Moving Defendants state "[w]hile Judge Scheindlin decided not to disclose the extent of her losses or all information that would be needed to determine them, the available information clearly and undisputably shows losses sufficient to require recusal for financial interests, 'however small.' *See* Section 455(d)(4)." Reply Mem. at 10. This statement is peculiar for two reasons: (1) Moving Defendants never asked this Court to quantify its gains or losses from IPO investments; and (2) the citation to section 455(d)(4) is clearly inapposite. Section 455(d)(4) defines the term "financial interest" which is found in section 455(b) but not in section 455(a). Finally, defendants describe the Court as a "failed IPO investor" but conveniently overlook the fact that the Court made money as well as lost money on several of its IPO investments. *See supra* Part IV.

**45.** It may be helpful to consider examples of cases in which courts have required recusal under section 455(a) and cases in which they have not. For cases requiring recusal, *see, e.g.*, *Offutt v. United States*, 348 U.S. 11, 12, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954) (recusal required where judge "personally attacked" counsel, and then summarily punished counsel for contempt); *Public Utils. Comm'n v. Pollak*, 343 U.S. 451, 466–67, 72 S.Ct. 813, 96 L.Ed. 1068 (1952) (Frankfurter, J., recusing himself prior to enactment of section 455 because of personal bias); *Republic of Panama v. American Tobacco Co.*, 217 F.3d 343 (5th Cir.2000)(recusal required where judge had been president of organization that filed amicus brief with similar allegations in case against defendants in state court and whose name was on filings in that case); *United States v. Kelly*, 888 F.2d 732, 738–39, 746 (11th Cir.1989)(recusal required where judge admitted to having a bias).

For cases in which recusal was not required, see *supra* note 39.

test should not be used by judges to avoid sitting on difficult or controversial cases.

At the same time, in assessing the reasonableness of a challenge to [her] impartiality, each judge must be alert to avoid the possibility that those who would question [her] impartiality are in fact seeking to avoid the consequences of [her] expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, *but they are not entitled to judges of their own choice.*

H.R.Rep. No. 93–1453, at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355 (first emphasis in original, second emphasis added).

For the reasons stated above, the Moving Defendants' motion for this Court to disqualify itself is denied.

SO ORDERED.

### APPENDIX

**Other Plaintiffs Counsel:**

Mark C. Gardy, Esq., Abbey Gardy, LLP, New York, NY.

Daniel A. Osborn, Esq., Beatie and Osborn LLP, New York, NY.

Evan Smith, Esq., Brodsky & Smith, LLC, Bala Cynwyd, PA.

Paul J. Geller, Esq., Cauley Geller Bowman & Coates, LLP, Boca Raton, FL.

Steven J. Toll, Esq., Cohen, Milstein, Hausfeld & Toll PLLC, Washington, DC.

Nadeem Faruqi, Esq., Faruqi & Faruqi, LLP, New York, NY.

William B. Federman, Esq., Federman & Sherwood, Oklahoma City, OK.

Jeffrey R. Krinsk, Esq., Finkelstein & Krinsk, San Diego, CA.

Burton H. Finkelstein, Esq., Finkelstein, Thompson & Loughran, Washington, DC.

Jack Fruchter, Esq., Fruchter & Twersky, New York, NY.

David K. Bergman, Esq., Frydman & Bergman, New York, NY.

Lawrence A. Sucharow, Esq., Joel H. Bernstein, Esq., David Goldsmith, Esq., Goodkind Labaton Rudoff & Sucharow LLP, New York, NY.

Harold B. Obstfeld, Esq., Law Offices of Harold B. Obstfeld, P.C., New York, NY.

Marc Edelson, Esq., Hoffman & Edelson, LLC, Doylestown, PA.

Corey D. Holzer, Esq., Holzer & Holzer, Atlanta, GA.

Gary S. Graifman, Esq., Robert D. Wilkins, Esq., Kantrowitz Goldhamer & Graifman, Chestnut Ridge, NY.

Randall K. Berger, Esq., Kirby Mcinerney & Squire, LLP, New York, NY.

Joseph P. Garland, Esq., Klein & Solomon, LLP, New York, NY.

Klari Neuwelt, Esq., Law Offices of Klari Neuwelt, New York, NY.

Harvey Greenfield, Esq., Law Offices of Harvey Greenfield, New York, NY.

Brian Barry, Esq., Law Offices of Brian Barry, Los Angeles, CA.

James V. Bashian, Esq., Law Offices of James V. Bashian, P.C., New York, NY.

Leo W. Desmond, Esq., Law Offices of Leo W. Desmond, West Palm Beach, FL.

Brian M. Felgoise, Esg., Law Offices of Brian M. Felgoise, Philadelphia, PA.

Lionel Z. Glancy, Esq., Law Offices of Lionel Z. Glancy, Los Angeles, CA.

Deborah M. Gross, Esq., Law Offices of Bernard M. Gross P.C., Philadelphia, PA.

Bruce G. Murphy, Esq., Law Offices of Bruce G. Murphy, Banner Elk, NC.

Alfred G. Yates, Jr., Esq., Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA.

Charles Piven, Esq., Law Offices of Charles J. Piven, P.A., Baltimore, MD.

Curtis V. Trinko, Esq., Law Offices of Curtis V. Trinko, New York, NY.

Stephen G. Levy, Esq., Levy & Levy, P.C., New York, NY.

Richard Lockridge, Esq., Gregg Fishbein, Esq., Lockridge, Grindal & Nauen PLLP, Minneapolis, MN.

Louis F. Burke, Esq., Louis F. Burke, P.C., New York, NY.

Karen L. Morris, Esq., Morris & Morris, Wilmington, DE.

Stanley M. Grossman, Esq., Pomerantz Haudek Block Grossman & Gross LLP, New York, NY.

I. Stephen Rabin, Esq., Rabin & Peckel, LLP, New York, NY.

Timothy D. Reuben, Esq., Reuben & Novicoff, Beverly Hills, CA.

Robert C. Susser, Esq., Robert C. Susser, P.C., New York, NY.

Andrew Schatz, Esq., Schatz & Nobel, P.C., Hartford, CT.

Samuel P. Sporn, Esq., Jay Saltzman, Esq., Schoengold & Sporn, P.C., New York, NY.

Neil Rothstein, Esq., Scott & Scott LLC, Colchetser, CT.

Robert M. Roseman, Esq., Joshua H. Grabar, Esq., Spector Roseman & Kodroff, P.C., Philadelphia, PA.

Richard J. Schager, Esq., Stamell & Schager, LLP, New York, NY.

Jonathan W. Cuneo, Esq., The Cuneo Law Group, P.C., Washington, DC.

John G. Emerson, Jr., Esq., The Emerson Firm, Little Rock, AK.

Marc S. Henzel, Esq., The Law Offices of Marc S. Henzel, Bala Cynwyd, PA.

Timothy J. Dennin, Esq., Timothy J. Dennin, P.C., New York, NY.

Paul J. Scarlato, Esq., Weinstein Kitchenoff Scarlato & Goldman Ltd., Philadelphia, PA.

Joseph H. Weiss, Esq., Weiss & Yourman, New York, NY.

**Counsel for the Underwriter Defendants:**

Gandolfo V. DiBlasi, John L. Hardiman, Penny Shane, David M.J. Rein, Sullivan & Cromwell, New York, NY, for The Goldman Sachs Group, Inc. and Goldman, Sachs & Co Inc., and Liaison Counsel for the Underwriter Defendants.

Harold R. Tyler, Jr., Patterson Belknap Webb & Tyler LLP, New York, NY, Special Counsel to Moving Underwriter Defendants.

Daniel P. Tighe, Andrew C. Griesinger, Griesinger, Walsh & Maffei, LLP, Boston, MA, for Adams, Harkness & Hill.

Kevin J. Toner, Victor Caldwell, Douglas M. Schwab, Heller Ehrman White & McAuliffe LLP, New York, NY, for Allen & Co, Inc.

Francis S. Chlapowski, Nicole M. Hunn, Brobeck, Phleger & Harrison LLP, New York, NY, for Banc of America Securities, LLC (f/k/a Nationsbanc Montgomery Securities, LLC).

Arthur D. Felsenfeld, Ilana Goldstein, Andrews & Kurth L.L.P., New York, NY, for Bear, Stearns & Co., Inc.

Gary Meyerhoff, Stephen L. Brodsky, Sonnenschein Nath & Rosenthal, New York, NY, for William Blair & Company, L.L.C.

Michele A. Coffey, Kevin Rover, Seth D. Amera, Morgan, Lewis & Bockius LLP, New York, NY, for C.E. Unterberg, Towbin.

Barry R. Ostrager, David W. Ichel, Pamela B. Reichlin, Elaine M. Divelbliss, Simpson Thacher & Bartlett, New York, NY, and Scott G. Campbell, Michael F. Coyne, J.P. Morgan & Co., Legal Department, New York, NY, for Chase Securities, Inc., J.P. Morgan Chase & Co., Hambrecht & Quist LLC, J.P. Morgan Securities, Inc., and Robert Fleming, Inc.

Jay B. Kasner, Scott D. Musoff, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for CIBC World Markets Corp. (f/k/a CIBC Oppenheimer Corp) (All cases except Navisite and Global Crossing, Ltd.).

Robert A. O'Hare, Jr., Christopher P. Parnagian, O'Hare Parnagian LLP, New York, NY, for CIBC World Markets Corp (f/k/a CIBC Oppenheimer Corp) (Navisite and Global Crossing Ltd.,cases only).

Robert B. McCaw, Fraser L. Hunter, Jr., Wilmer, Cutler & Pickering, New York, NY, for Credit Suisse First Boston Corporation, Donaldson, Lufkin & Jenrette, DLJ Securites, Inc, and DLJ Direct.

Stewart D. Aaron; Beverly Slaughter, Brooke Pietrzak, Dorsey & Whitney LLP, New York, NY, for Dain Rauscher Inc.

A. Robert Pietrzak, David B. Gordon, Daniel A. Goldschmidt, Sidley Austin Brown & Wood, New York, NY, for Deutsche Banc Alex.Brown (f/k/a Deutsche Bank Securities and BT Alex. Brown, Inc.)

Jeffrey Barist, Douglas W. Henkin, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, for Deutsche Banc Alex.Brown (f/k/a Deutsche Bank Securities and BT Alex. Brown, Inc.)

John D. Donovan, Jr., Robert G. Jones, Ropes & Gray, Boston, MA, for Fidelity Capital Markets.

Bryan B. House, Samuel J. Winer, Foley & Lardner, Washington, D.C., for First Albany Corp.

Howard W. Gutman, Steven M. Farina, Williams & Connolly LLP, Washington, DC, for Friedman, Billings, Ramsey & Co, Inc.

David Smith, Rolin P. Bissell, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, for Legg Mason Wood Walker, Inc.

Moses Silverman, Philip G. Barber, Andrew Tauber, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, for Lehman Brothers Inc.

James N. Benedict, Mark Holland, Robert G. Houck, Clifford Chance Rogers & Wells LLP, New York, NY, for Merrill Lynch, Pierce, Fenner & Smith Inc. and Merrill Lynch & Co., Inc.

Bryan B. House, Samuel J. Winer, Foley & Lardner, Washington, D.C., for Morgan Keegan & Co.

Steven G. Bradbury, Andrew B. Clubok, Brant W. Bishop, Elizabeth L. Deeley, Kirkland & Ellis, Washington, DC, for Morgan Stanley Dean Witter, Inc.

Stephen L. Ratner, Alyson M. Weiss, Rosenman & Colin LLP, New York, NY, for Prudential Securities, Inc. and Volpe Brown Whelan & Co., LLC.

Y. David Scharf, Morrison Cohen Singer & Weinstein, New York, NY, for Robert W. Baird & Co., Inc.

Andrew J. Frackman, Robert M. Stern, Brendan Dowd, O'Melveny & Myers LLP, New York, NY, for Robertson Stephens, Inc., sued as BancBoston Robertson Ste-

phens, Inc. and FleetBoston Robertson Stephens, Inc.

Robert B. McCaw, Fraser L. Hunter, Jr., Wilmer, Cutler & Pickering, New York, NY, for Salomon Smith Barney Inc.

Jay B. Kasner, Scott D. Musoff, Skadden, Arps, Slate, Meagher & Flom, LLP New York, NY, for SG Cowen Securities Corp.

Richard F. Ziegler, Mitchell A. Lowenthal, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for Thomas Weisel Partners LLC.

Stephen L. Ratner, Alyson M. Weiss, Rosenman & Colin LLP, New York, NY, for Tucker Anthony Incorporated and Tucker Anthony Cleary Gull, Inc.

Richard F. Ziegler, Mitchell A. Lowenthal, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for UBS Warburg, Warburg Dillion Read LLC and UBS PaineWebber Inc.

Bryan B. House, Samuel J. Winer, Foley & Lardner, Washington, D.C., for U.S. Bancorp Piper Jaffrey, Inc.

Michael Lawson, Rudolph Reyes, Steefel, Levitt & Weiss, San Francisco, CA, for Wells Fargo Van Kasper ( f/k/a First Security Van Kasper).

Michele A. Coffey, Kevin Rover, Seth D. Amera, Morgan, Lewis & Bockius LLP, New York, NY, for Wit SoundView Corp., Wit Capital Corp., SoundView Technology Group, Inc., Wit SoundView Group, Inc. and E*Offering Corp.

**Counsel for the Issuer Defendants:**

Jack C. Auspitz, Hilary M. Williams, Daniel W. Levy, Morrison & Foerster, LLP, New York, NY, for 724 Solutions, Inc., Frank Marshall, Charles McMinn, Cybersource, Inc., William S. McKiernan, Digimarc Corp., Bruce Davis, Geoffrey Rhoads, E.K. Ranjit, Philip J. Monego, Sr., Brian V. Grossi, John Taysom, Double-

Click, Inc., Kevin J. O'Connor, Kevin P. Ryan, Dwight A. Merriman, Stephen R. Collins, Integrated Information Systems, Inc., Loudeye Technologies, Inc., Marimba, Inc., Kim K. Polese, Fred M. Gerson, Arthur A. Van Hoff, Modem Media, Inc., Gerald M. O'Connell, Robert Allen II, Steven C. Roberts, Neoforma.com, Inc., ONI Systems Corp., Razorfish, Inc., Jeffrey A. Dachis, Susan Black, Carter F. Bales and John Wren and Liaison Counsel for the Issuer Defendants.

John A. Jordak, Jr., Alston & Bird LLP, Atlanta, GA for iXL Enterprises, Inc., U. Bertram Ellis and Wayne Boylston.

Stephen M. Sacks, John A. Freedman, Arnold & Porter, Washington, D.C., for El Sitio, Inc., Roberto Cibrian–Campoy, Horacio Milberg, Roberto Vivo–Chaneton, Alfredo Jimenez de Arechaga, Sofia Pescarmona, Carlos Cisneros, Michael Greeley, Guillermo Liberman, Ricardo Verdaguer, Michael Levitt, IMPSAT Fiber Networks, Inc., Ricardo A. Verdaguer, Guillermo Jofre and Enrique M. Pescarmona.

Steven R. Gustavson, Samuel Cooper, Michael C. Massengale, Baker Botts L.L.P., Houston, TX, for Ashford.com, Inc., J. Robert Shaw, Kenneth Kurtzman, James Whitcomb, Jr., David Gow and Kevin R. Harvey.

Daniel J. Bergeson, Caroline McIntyre, Bergeson Eliopoulos, LLP, San Jose, CA, for Preview Systems, Inc., Vincent Pluvinage and G. Bradford Solso.

Steven W. Hansen, Heidi A. Nadel, Bingham Dana, LLP, Boston, MA, for iBasis, Inc., Ofer Gneezy, Michael J. Hughes, Gordon J. VanderBrug, Robert Maginn, Charles S. Houser, Izhar Armony, John Jarve, Charles N. Corfield, Rowecom, Inc., Richard Rowe and Louis Hernandez, Jr.

Gregory A. Markel, Ronit Setton, Randi B. Guest, Brobeck, Phleger & Harrison, LLP, New York, NY, Accelerated Networks,

Inc., Suresh Nihalani, Frederic T. Boyer, H.R. Johnson, Steven M. Krausz, Peter T. Morris, Robert F. Kuhling, Jr., Anthony T. Maher, Lip Bu Tan, AGENCY.COM Ltd., Chan Suh, Kyle Shannon, Charles T. Dickson, Kenneth Trush, Airspan Networks, Inc., Matthew Desch, Eric D. Stonestrom, Jonathan Paget, Joseph J. Caffarelli, Autobytel Inc., Michael J. Fuchs, Mark W. Lorimer, Hoshi Printer, Autoweb.com, Inc., Dean DeBiase, Frank Zamani, Payam Zamani, Mark Diker, Jay Hoag, Mark Ross, Peter Sealey, Samuel Hedgpeth, AvantGo, Richard Owen, David Cooper, Felix Lin, BSQUARE Corporation, William T. Baxter, Brian V. Turner, Albert T. Dosser, Peter R. Gregory, Jeffrey T. Chambers, Scott E. Land, William Larson, CNET Networks, Inc. (successor to Ziff Davis, Inc.), Timothy O'Brien, Eric Hippeau, Digital Island, Inc., Ron Higgins, Ruann Ernst, T.L. Thompson, Michael Sullivan, Digitas, Inc., David Kenny, Kathleen Biro, Michael Goss, Michael Ward, Michael E. Bronner, Philip U. Hammarskjold, Patrick J. Healey, Arthur Kern, Drugstore.com, Inc., Peter M. Neupert, David E. Rostov, Jeffrey P. Bezos, Brook H. Byers, L. John Doerr, William D. Savoy, Howard Schultz, Jed A. Smith, Mark Silverman, Equinix, Inc., Peter Van Camp, Albert M. Avery, Philip J. Koen, Scott Kriens, Andrew S. Rahchleff, John G. Taysom, Michelangelo Volpi, Dawn Lepore, High Speed Access Corp., Ron Pitcock, George Willett, Hoover's Inc., iBEAM Broadcasting Corporation, Chris Dier, Peter Desnoes, MarketWatch.com, Inc., Larry S. Kramer, James DePalma, Andrew Heyward, Michael H. Jordan, Peter Bardwick, Multex.com, Inc., Isaak Karaev, Philip Callaghan, Philip Scheps, I. Robert Greene, Lennert J. Leader, Herbert L. Skeete, Net2000 Communications, Inc., Clayton A. Thomas, Jr., Clyde Heintzelman, Donald E. Clarke, Peter B. Callow-

hill, Eric Geis, Reid Miles, Mitchell Reese, NetZero,Inc., Mark R. Goldston, Ronald T. Burr, James T. Armstrong, David C. Bohnett, Jennifer S. Fonstad, Bill Gross, Paul G. Koontz, Charles S. Hilliard, Onvia.com, Inc., Glenn Ballman, Mark Calvert, PlanetRx.com, Inc., William J. Razzouk, David M. Beirne, Michael Moritz, Christos Cotsakas, Steve Valenzuela, Portal Software, Inc., John E. Little, Jack L. Acosta, Mitchell Gaynor, Register.com, Inc., Alan Breitman, Richard Forman, Sycamore Networks, Inc., Daniel E. Smith, Gururaj Deshpande, Frances M. Jewels, Timothy Barrows, Paul Ferri, theglobe.com, inc., Todd Krizelman, Stephan Paternot, Frank Joyce, Michael Egan, Tickets.com, Inc., W. Thomas Gimple, John M. Markovich, Michael R. Rodriguez, C. Ian Sym-Smith, Thomas Pascoe, James A. Caccavo, Christos M. Cotsakos, William E. Ford, Howard L. Morgan, Irvin E. Richter, Nicholas E. Sinacori, Verado Holdings, Inc., Jeffrey L. Dykes, Paul C. Adams, Sheldon S. Ohringer, Vignette Corporation, Z-Tel Technologies, Inc., D. Gregory Smith, John Hutchens.

William S. Freeman, John C. Dwyer, Cooley Godward LLP, Palo Alto, CA, and William E. Grauer, Cooley Godward LLP, San Diego, CA, for Blue Martini Software, Inc., John E. Calonico, James C. Gaither, A. Michael Spence, Andrew W. Verhalen, Edward H. Vick, William F. Zuendt, Monte Zweben, Buy.com, Inc., William L. Burnham, Gregory J. Hawkins, Mitch C. Hill, David B. Ingram, Donald W. Kendall, Charles W. Richion, James B. Roszak, Edward S. Russell, John Sculley, Wayne T. Thorson, Chordiant Software, Inc., Oliver D. Curme, Kathryn C. Gould, Mitchell Kertzman, Samuel T. Spadafora, Steven R. Springsteel, Joseph F. Tumminaro, Clarent Corporation, Jerry Shaw Yau-Chang, Richard J. Heaps, Wen Chang Ko, Syaru Shirley Lin, Michael F. Vargo, Digital Riv-

er, Inc., Joel Ronning, Gregory Smith, Perry Steiner, Robert Strawman, Eloquent, Inc., John R. Curson, Abraham Kleinfield, Internap Network Services Corporation, Eugene Eidenberg, Paul E. McBride, Anthony C. Naughtin, Wireless Facilities, Inc., Thomas A. Munro, Masood K. Tayebi and Massih Tayebi.

Linda C. Goldstein, Mark P. Gimbel, Covington & Burling, New York, NY, for Caliper Technologies Corp., Daniel L. Kisner, James L. Knighton and David V. Milligan.

Evan R. Chesler, Daniel Slifkin, Kevin J. Kehoe, Jr., Cravath, Swaine & Moore, New York, NY, for Priceline.com, Inc., Richard S. Braddock, Daniel H. Schulman, Paul E. Francis and Jay S. Walker.

Nancy E. Delaney, Joseph D. Pizzurro, Curtis, Mallet–Prevost, Colt & Mosle LLP, New York, NY, for Critical Path, Inc., David C. Hayden, Douglas T. Hickey and David A. Thatcher.

Robert F. Wise, Jr., Zachary S. McGee, Davis Polk & Wardwell, New York, NY, for Ventro Corporation, David P. Perry, Brook H. Byers, Jonathan D. Callaghan, Jerrold B. Harris, S. Joshua Lewis, John A. Pritzker, L. John Wilkerson, Netro Corporation, Richard Moley, Gideon Ben–Efraim and Michael Everett.

William K. Dodds, Steven B. Feirson (pro hac), Melvin A. Schwarz, Dechert Price & Rhoads, New York, NY, for Internet Capital Group, Inc., Walter W. Buckley, III, Robert E. Keith, Jr., Kenneth A. Fox, David D. Gathman, Julian Brodsky, Michael Forgash, Thomas Gerrity, Scott Gould, Intersil Holding Corporation, Gregory L. Williams, Daniel J. Heneghan,VerticalNet, Inc., Mark L. Walsh, Michael J. Hagan, Gene S. Godick, Douglas A. Alexander, Jeffrey C. Ballowe and Matthew J. Warta.

Edward M. Posner, Jeffrey P. Wallack, Drinker Biddle & Reath LLP, Philadelphia, PA, for West Shell, III and John F. Longinotti.

Timothy K. Roake, David M. Lisi, Fenwick & West LLP, Palo Alto, CA, for Concur Technologies, Inc., S. Steven Singh, Sterling R. Wilson, Michael W. Hilton, Keynote Systems, Inc., Umang Gupta, John Flavio, GRIC Communications, Inc., Roger Peirce, Hong Chen, Joseph Zaelit, David Teichmann, Talarian Corporation, Paul A. Larson, Michael A. Morgan, Thomas J. Laffey, Kana Software, Inc., Michael McCloskey, Mark Gainey, Joseph McCarthy, Handspring Inc., Donna L. Dubinsky, Bernard J. Whitney, Niku Corp., Farzad DiBachi and Mark Nelson.

Peter J. Beshar, Mitchell A. Karlan, Gibson, Dunn & Crutcher, LLP, New York, NY, for ITXC Corporation, Tom I. Evslin, Edward B. Jordan, Marvell Technology Group, Ltd., Dr. Sehat Sutardja, George Hervey, MedicaLogic, Inc., Mark K. Leavitt, Frank J. Spina, Mediaplex, Inc., Gregory R. Raifman, Sandra L. Abbott, Jon L. Edwards, Lawrence D. Lenihan, Peter S. Sealey, James Desorrento and A. Brooke Seawell.

R. Todd Cronan, P.C., Goodwin Procter LLP, Boston, MA, and J. Todd Hahn, Goodwin Procter LLP, New York, N.Y. for Fairmarket, Inc., Scott T. Randall and John Belchers.

Shirli Fabbri Weiss, Gray Cary Ware & Freidenrich, LLP, San Diego, CA, for (with James K. Leader, Leader & Berkon, LLP, New York, NY) Calico Commerce, Inc., Alan P. Naumann, William G. Paseman, Arthur Knapp, Bernard J. Lacroute, William D. Unger, iPrint, Inc., Royal P. Farros, James P. McCormick, Microtune, Inc., Douglas J. Bartek, Everett Rogers, Agile Software Corporation, Bryan Stolle, Thomas P. Shanahan and (with Stephen Greiner, Terence McLaughlin, Willkie

Farr & Gallagher, New York, NY) Extreme Networks, Inc., Gordon L. Stitt, Vito Palermo, iManage, Inc., Max Panjwani, Mark A. Culhane, Rafiq Mohammadi, Mark Perry, Moez Virani, Virage, Inc., Paul G. Lego and Alfred J. Castino.

Robert P. Stein, Toby S. Soli, Greenberg Traurig LLP, New York, NY, for SmartDisk Corporation, Addison M. Fischer, Michael S. Battaglia and Michael R. Mattingly.

Ronald D. Lefton, Toby S. Soli, Greenberg Traurig LLP, New York, NY, for Allan R. Tessler, Alan J. Hirschfield and Mark F. Imperiale.

Jeffrey B. Rudman, William H. Paine, John F. Batter III, Michelle D. Miller, Hale and Dorr LLP, Boston, MA, and Robin L. Alperstein, Hale and Dorr LLP, New York, NY, for Akamai Technologies, Inc., George H. Conrades, Paul Sagan, Thomas K. Leighton, Daniel M. Lewin, Robert O. Ball III, Arthur H. Bilger, Todd A. Dagres, Terrance G. McGuire, Edward W. Scott, Timothy Weller, Aspect Medical Systems, Inc., Bookham Technologies, Andrew G. Rickman, Stephen J. Cockrell, David Simpson, Bottomline Technologies, Inc., Daniel M. McGurl, Robert A. Eberle, Gordon Brooks, Kevin Comerford, Christopher H. Greendale, iMany, McDATA Corporation, John F. McDonnell, Thomas McGimpsey, Dee J. Perry, Network Plus Corp., Robert T. Hale, Jr., James J. Crowley, George Alex, OTG Software, Inc., Richard A. Kay, F. William Caple, Ronald W. Kaiser, Proton Energy Systems, Inc., Walter W. Schroeder, John A. Glidden, Trent M. Moldter, Robert W. Shaw, Jr., Silverstream Software, Inc., David R. Skok, David A. Litwack, Craig A. Dynes, StorageNetworks, Inc., Peter W. Bell, William D. Miller, Paul C. Flanagan, Switchboard, Inc., TeleCommunication Systems,

Inc., Maurice B. Tose and Thomas M. Brandt, Jr.

David Siegel, David A. Schwarz, Richard H. Zelichov, Irell & Manella LLP, Los Angeles, CA, (with Nancy E. Delaney, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY) for Stamps.com Inc., John W. LaValle, Thomas H. Bruggere, Mohan P. Ananda, David C. Bohnett, Jeffrey J. Brown, Thomas N. Clancy, G. Bradford Jones, Marvin Runyon, Loren E. Smith and Carolyn M. Ticknor.

David H. Kistenbroker, James E. Hanlon, Jr., Katten Muchin Zavis, Chicago, IL, for Lante Corporation, Inc., C. Rudy Puryear, Mark Tebbe, John Oltman and Brian Henry.

Selvyn Seidel, Jeff G. Hammel, Patricia M. Grande, Latham & Watkins, New York, NY, and Hugh Steven Wilson, Latham & Watkins, San Diego, CA, and Paul M. Dawes, Jay L. Pomerantz, Latham & Watkins, Menlo Park, CA, for drkoop.com, Inc., C. Everett Koop, John Zuccarro, Donald W. Hackett, Susan M. Georgen-Saad, Jeffrey C. Ballowe, Louis Scalpati, Mardian J. Blair, G. Carl Everett, Jr., Richard D. Helppie, Jr., Nancy L. Snyderman, MP3.com, Inc., Michael L. Robertson, Robin D. Richards, Paul L.H. Ouyang, David E. Easterly, Lawrence F. Probst III, Mark A. Stevens, Theodore W. Waitt, Next Level Communications, Inc., Peter W. Keeler, James T. Wandrey, Richard C. Smith, Kevin Kimberlin, TiVo, Inc., Michael Ramsay, James Barton and David Courtney.

Cary B. Samowitz, Lord, Bissell & Brook, New York, NY, and Bedell A. Tippins, A. Kelly Turner, Lord, Bissell & Brook, Chicago, IL, for Stratos Lightwave, Inc., James W. McGinley and David A. Slack.

Dennis P. Orr, Richard A. Spehr, Joseph DeSimone, Mayer, Brown & Platt, New York, NY, for Corvis Corporation, David

R. Huber, Anne H. Stuart, Timothy C. Dec, Frank Bonsal, Vinod Khosla, Frank M. Drendel, Joseph R. Hardiman, Organic, Inc., Jonathan Nelson, Michael Hudes, Susan L. Field, Red Hat, Inc., Robert F. Young, Matthew J. Szulik, Marc Ewing, Lexent, Inc., Alf T. Hansen, Jonathan H. Stern, Hugh J. O'Kane, Jr., Kevin M. O'Kane, co-counsel for Blue Martini Software, Inc., John E. Calonico, James C. Gaither, A. Michael Spence, Andrew W. Verhalen, Edward H. Vick, William F. Zuendt, Monte Zweben, Buy.com, Inc., William L. Burnham, Gregory J. Hawkins, Mitch C. Hill, David B. Ingram, Donald W. Kendall, Charles W. Richion, James B. Roszak, Edward S. Russell, John Sculley, Wayne T. Thorson, Chordiant Software, Inc., Oliver D. Curme, Kathryn C. Gould, Mitchell Kertzman, Samuel T. Spadafora, Steven R. Springsteel, Joseph F. Tumminaro, Clarent Corporation, Jerry Shaw Yau–Chang, Richard J. Heaps, Wen Chang Ko, Syaru Shirley Lin, Michael F. Vargo, Digital River, Inc., Joel Ronning, Gregory Smith, Perry Steiner, Robert Strawman, Eloquent, Inc., John R. Curson, Abraham Kleinfield, Internap Network Services Corporation, Eugene Eidenberg, Paul E. McBride, Anthony C. Naughtin, Wireless Facilities, Inc., Thomas A. Munro, Masood K. Tayebi and Massih Tayebi.

John D. Lovi, Michael Kendall, Jonathan Twombly, McDermott, Will & Emery, New York, NY, for Firepond, Inc., Klaus P. Besier and Paul K. McDermott.

Lisa Klein Wager, Tara C. Prigge, Morgan, Lewis & Bockius, LLP, New York, NY, for Freemarkets, Inc., Glen Meakem, Joan Hooper, Sam Kinney, Jr., Eric Cooper, David Becker and David Noble.

J. Peter Coll, Jr., Peter A. Bicks, Gino D. Vissicchio, Holly T.M. Dellenbaugh, Orrick, Herrington & Sutcliffe, LLP, New York, NY, for iVillage, Inc., Candice Carpenter, Nancy Evans, Douglas McCormick, Craig T. Monaghan and Sanjay Muraldihar.

Barry M. Kaplan, Douglas W. Greene, Perkins Coie, LLP, Seattle, WA, (with Nancy E. Delaney, Curtis, Mallet–Prevost, Colt & Mosle LLP, New York, NY) for Avenue A., Inc., Brian P. McAndrews, Nicolas J. Hanauer and Robert M. Littauer.

Walter J. Robinson, Charles R. Ragan, Pillsbury Winthrop LLP, Palo Alto, CA, and David G. Keyko, Pillsbury Winthrop, New York, NY, for Transmeta Corporation, David R. Ditzel, Mark K. Allen, Douglas A. Laird, James N. Chapman, Murray A. Goldman, Merle A. McClendon, R. Hugh Barnes, Larry R. Carter, Paul M. McNulty, William P. Tai and T. Peter Thomas.

Yvette Harmon, Lawrence R. Samuels, Christine M. Fecko, Ross & Hardies, Chicago, IL, for Vicinity Corporation and Emerick M. Woods.

Jeffrey S. Facter, Shearman & Sterling, San Francisco, CA, for Ariba, Inc., Keith Krach, Paul Hegarty, Robert Kagle, Hatim Tyabji, John Mumford, Expedia, Inc., Gregory Stanger, Gregory Maffei, Richard Barton, Retek, Inc., John Buchanan, Gregory Effertz, Gordon Masson, Selectica, Inc., Rajen Jaswa, Sanjay Mittal and Stephen Bennion.

Paul C. Curnin, Chet A. Kronenberg, Simpson Thacher & Bartlett, New York, NY, for Global Crossing Ltd., Frontier Corporation, Gary Winnick, Lodwrick Cook, Jack Scanlon, Dan Cohrs, James Gorton, David Lee, Barry Porter, Abbott Brown, Joseph Clayton, Rolla Huff, Dean Kehler, Jay Bloom, Bruce Raben, Hillel Weinberger, Jay Levine, William Phoenix and Michael Steed.

James R. Carroll, Matthew J. Matule, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, for NaviSite, Inc., Ken-

neth W. Hale, Joel B. Rosen and Robert B. Eisenberg.

Samuel Kadet, Lauren Aguiar, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for deltathree, Inc., Net2Phone, Inc., Howard S. Balter and Ilan M. Slasky.

Garrett J. Waltzer, Skadden, Arps, Slate, Meagher & Flom LLP, Palo Alto, CA, and Lauren Aguiar, Skadden, Arps, Slate, Meagher & Flom LLP, New York, N.Y. for Niku Corporation, Mark Nelson and Farzad Dibachi.

Brian E. Pastuszenski, Jordan D. Hershman, Testa, Hurwitz & Thibeault, LLP, Boston, MA, for Telaxis Communications Corporation, John L. Youngblood, Dennis C. Stempel, Albert E. Paladino, Lionbridge Technologies, Inc., Rory J. Cowan, Stephen J. Lifshatz, Guy L. DeChazal, Marcia J. Hopper, Stephen M. Jenks, Paul Kavanagh, Claude P. Sheer, Delano Technology Corporation, John Foresi, Thomas Hearne, James R. Swartz, Henry Zannini, Avici Systems, Inc., Surya R. Panditi, Paul F. Brauneis, NETsilicon, Inc., Cornelius Peterson VIII, Daniel J. Sullivan, Matrix-One, Inc., Mark F. O'Connell, Maurice L. Castonguay, ON Semiconductor Corp., Steve Hanson, Dario Sacomani, Curtis J. Crawford, Apropos Technology, Inc., Kevin G. Kerns, and Michael J. Profita.

Diane Harvey, Paul M. Basta, Weil, Gotshal & Manges LLP, New York, NY, for Edward J. Zander, William R. Stensrud, John L. Walecka, Keith B. Geeslin, Kevin R. Compton, Steve Stringer, Ken L. Harrison and Scott C. Chandler.

Stephen Greiner, Terence McLaughlin, Willkie Farr & Gallagher, New York, NY, for StarMedia Network, Inc., Fernando J. Espuelas, Jack C. Chen, Steven J. Heller and (with Shirli Fabbri Weiss, Gray Cary Ware & Freidenrich, LLP, San Diego, CA) Extreme Networks, Inc., Gordon L. Stitt, Vito Palermo, iManage, Inc., Max Pan-

jwani, Mark A. Culhane, Rafiq Mohammadi, Mark Perry, Moez Virani, Virage, Inc., Paul G. Lego and Alfred J. Castino.

Nina F. Locker, Laurie B. Smilan, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, (with Nancy E. Delaney, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY) for Avanex Corporation, BackWeb Technologies Ltd., Brocade Communications Systems, Inc., CacheFlow, Inc., chinadotcom corporation, Commerce One, Inc., Digital Impact, Inc., DigitalThink, Inc., E.piphany, Inc., Evolve Software, Inc., F5 Networks, Inc., Gadzoox Networks, Inc., GoTo.com, Inc., Integrated Telecom Express, Inc., InterTrust Technologies Corporation, Intraware, Inc., Liberate Technologies, Inc., Liquid Audio, Inc., McAfee.com Corporation, New Focus, Inc., Nuance Communications, Inc., OmniSky Corporation, OpenTV Corp., Palm, Inc., Perot Systems Corporation, Predictive Systems, Inc., QuickLogic Corporation, Redback Networks, Inc., Sirenza Microdevices, Inc., TIBCO Software, Inc., Triton Networks, Inc., Turnstone Systems, Inc., Tut Systems, Inc., UTStarcom, Inc., Universal Access Global Holdings, Inc., VA Linux Systems, Inc., Viant Corporation, Walter Alessandrini, Jessy Chao, Michael Byrd, Seth D. Neiman, Gregory L. Reyes, Michael J. Johnson, Michael Malcolm, Brian M. NeSmith, John V. Balen, William B. Elmore, Kenneth C. Gardner, Thomas J. Gonzales, II, William J. Harding, Mark B. Hoffman, Peter F. Pervere, Jay M. Tenebaum, Jeffrey T. Webber, Gerardo Capiel, David Oppenheimer, William Park, Edward C. Lenk, Steven J. Schoch, Robert Chamberlain, Jeffrey Hussey, Alistair Black, Christine E. Munson, Bill Sickler, Jeffrey Brewer, William Gross, Robert Kavner, Ted Meisel, Todd Tappin, David C. Chance, Peter Van Cuylenburg, Edmund J. Fish, Bruce Fredrickson, Satish K. Gupta, Erwin N. Lenowitz,

Victor Shear, David M. Van Wie, Nancy J. Hilker, Mitchell E. Kertzman, Sanford Climan, Gary Iwatani, Jr., Gerald Kearby, Silvia Kessel, Eric Robison, Philip Wiser, Ann Winblad, Evan Collins, William Larson, Srivats Sampath, Milton Chang, John Dexheimer, Winston S. Fu, R. Clark Harris, David L. Lee, Robert D. Pavey, William L. Potts, Jr., Kenneth E. Westrick, Ronald Croen, Yogen Dalal, Brian Danella, Graham Smith, Randall S. Livingston, Jan Steenkamp, Jacobus D.T. Stofberg, Eric Benhamou, Judy Bruner, Alan Kessler, Carl Yankowski, Stephen Yu, Ross Perot, Terry Ashwill, Peter Altabef, Dennis L. Barsema, Geoffrey C. Darby, Douglas Atkin, Yogen Dalal, Paul Hansen, Edward Kozel, Donald Listwin, Vivek Ranadive, Larry Sonsini, Robert Stefanski, John Taysom, Philip Wood, Larry M. Augustin, Todd B. Schull, Craig Winn, Rex Scatena, William Davidow, Kevin English, Robert L. Gett, William E. Kelvie, Venetia Kontogouris, M. Dwayne Nesmith, Michael Tubridy, Louis Borders, Mark Holtzman and Robert Swan.

Robert M. Buschmann, Christoph C. Heisenberg, Winston & Strawn, New York, NY, for Terra Networks, S.A.